Sara Ghafouri, OSB #111021
Sarah Melton, OSB #227050
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
sghafouri@amforest.org
smelton@amforest.org

*Attorneys for Proposed Defendant-Intervenor*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| **CASCADIA WILDLANDS**, an Oregon non-profit corporation,<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>**CHERYL ADCOCK**, in her official capacity as Field Manager of the Siuslaw Field Office, Northwest Oregon District BLM; and **PAUL TIGAN**, in their official capacity as Field Manager of the Mary's Peak Field Office, Northwest Oregon District BLM; and **UNITED STATES BUREAU OF LAND MANAGEMENT,** an administrative agency of the United States Department of Interior,<br><br>　　　Defendants,<br><br>　　　and<br><br>**AMERICAN FOREST RESOURCE COUNCIL**, an Oregon non-profit corporation,<br><br>　　　Proposed Defendant-Intervenor. | Civil No. 6:22-cv-00767-AA<br><br>**[PROPOSED] DEFENDANT-INTERVENOR'S MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT** |

## <u>TABLE OF CONTENTS</u>

LR 7-1(A) CERTIFICATION ................................................................................. 1

MOTION ................................................................................................................ 1

MEMORANDUM .................................................................................................. 3

   I.   INTRODUCTION ....................................................................................... 3

   II.   FACTUAL BACKGROUND ....................................................................... 5

   III.   ARGUMENT ................................................................................................ 6

      A.  Legal Standard for Intervention ................................................................ 6

      B.  Proposed Intervenor Is Entitled to Intervene as of Right ........................... 8

          1.  The motion is timely ........................................................................ 8

          2.  Proposed Intervenor has significant interests that are related to the subject matter of the litigation ........................................................ 9

          3.  Proposed Intervenor would be impaired by the disposition of this litigation ........ 11

          4.  Proposed Intervenor is not adequately represented by the existing parties ........... 12

      C.  Alternatively, the Court May Grant Permissive Intervention ...................... 14

   IV.   CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied Concrete & Supply Co. v. Baker*,
904 F.3d 1053 (9th Cir. 2018) ................................................................12

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) ...............................................................12

*Citizens of Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .................................................................13

*Ctr. For Biological Diversity v. Gould*,
No. 1:15-CV-01329-WBS-GSA, 2015 WL 6951295 (E.D. Cal. Nov. 10,
2015) ......................................................................................................10

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*,
No. 21-16382, 2022 WL 3656444 (9th Cir. Aug. 24, 2022) ..................15

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995), *abrogated by Wilderness Soc'y v. U.S. Forest
Serv.*, 630 F.3d 1173 (9th Cir. 2011) (*en banc*) ........................11, 12, 13

*Hells Canyon Pres. Council v. Stein*,
No. 2:17-CV-00843-SU, 2017 WL 3641419 (D. Or. Aug. 24, 2017) ....11

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ...................................................................8

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3rd Cir. 1998) .................................................................10

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2002), *abrogated in part on other grounds by
Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (*en
banc*) ...............................................................................................7, 8, 15

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .................................................................11

*Mont. Elders for a Livable Tomorrow v. U.S. Office of Surface Mining*,
No. 15-CV-106-M-DWM, 2015 WL 12748263 (D. Mont. Dec. 11, 2015) ...........................13

*N. Cascades Conservation Council v. U.S. Forest Serv.*,
No. 2:20-CV-01321-RAJ-BAT, 2021 WL 871421 (W.D. Wash. Mar. 9, 2021) ...................10

*Native Ecosystem Council v. Marten,*
  No. CV 17-153-M-DWM, 2018 WL 2364293 (D. Mont. May 24, 2018) ......................11, 13

*Nw. Forest Res. Council v. Glickman,*
  82 F.3d 825 (9th Cir. 1996) .....................................................................................................8

*Orange Cnty. v. Air California,*
  799 F.2d 535 (9th Cir. 1986) ...................................................................................................8

*Seattle Audubon v. Sutherland,*
  No. 06-CV-1608MJP, 2007 WL 130324 (W.D. Wash. Jan. 16, 2007) ..................................11

*Smith v. Los Angeles Unified Sch. Dist.,*
  830 F.3d 843 (9th Cir. 2016) ...................................................................................................8

*Sw. Ctr. for Biological Diversity v. Babbitt,*
  150 F.3d 1152 (9th Cir. 1998) ...............................................................................................13

*Sw. Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) ...................................................................................7, 11, 14

*United States v. City of Los Angeles, Cal.,*
  288 F.3d 391 (9th Cir. 2002) ...................................................................................................9

*W. Watersheds Project v. Haaland,*
  22 F.4th 828 (9th Cir. 2022) ...................................................................................................8

*Wilderness Soc'y v. U.S. Forest Serv.,*
  630 F.3d 1173 (9th Cir. 2011) (*en banc*) .................................................................6, 7, 9, 11

**Statutes**

16 U.S.C. §§ 7101-7153 ...............................................................................................................4

43 U.S.C. § 2601 ........................................................................................................................2, 4

43 U.S.C. § 2605(a) .......................................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 24(a) ........................................................................................................... *passim*

Fed. R. Civ. P. 24(b) ........................................................................................................... *passim*

LR 7-1 ............................................................................................................................................1

## LR 7-1(A) CERTIFICATION

Pursuant to Local Rule 7-1, Proposed Intervenor American Forest Resource Council (AFRC) certifies that the undersigned counsel conferred with counsel for Plaintiff and Federal Defendants on this motion on November 3, 2023.  Counsel for Plaintiff takes no position on the motion, and counsel for Federal Defendants do not oppose the motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure (FRCP) 24, Proposed Intervenor AFRC respectfully moves to intervene as a defendant in this case, which challenges the Bureau of Land Management's (BLM) approval of the N126 Late-Successional Reserve Landscape Plan Project (N126 Project); the agency's Environmental Assessment (EA), Finding of No Significant Impact (FONSI), and Decision Record (DR) for the N126 Project; and the agency's reliance on Determinations of National Environmental Policy Act  Adequacy (DNAs) for the approval of the Pucker Up Density Management Project (Pucker Up Project) and the Gone Fishin' Density Management Project (Gone Fishin' Project).

This Court should grant Proposed Intervenor's motion to intervene as of right under FRCP 24(a)(2) because AFRC satisfies all four intervention factors.  First, this motion is timely because it is early in the litigation.  Plaintiff filed their Amended Complaint on September 7, 2023, and Federal Defendants filed their Answer to the Amended Complaint on September 21, 2023.  Am. Compl. (ECF No. 29); Answer (ECF No. 30).  Because no proposed briefing schedule is in place, this leaves ample time for Proposed Intervenor to be allowed to intervene as of right in this case without prejudicing any party in the proceeding or this Court.

Second, Proposed Intervenor has a significant protectable interest in this case.  AFRC represents forest products manufacturers and affiliated companies who are frequent purchasers of

timber sales on BLM-administered lands in northwestern Oregon.  AFRC's members have purchased the first five timber sales implementing the N126 Project, i.e., Pucker Up, Gone Fishin', Walker Point, Upper Greenleaf, and Cefir Miles timber sales.  Declaration of Andy Geissler (Geissler Decl.) ¶ 27.  In addition, AFRC's members B&G Logging and Construction, Sierra Pacific Industries, Freres Engineered Wood, Boise Cascade, Swanson Group, and Rosboro, are the likely purchasers of any future sales implementing the N126 Project.  *Id.* ¶¶ 6-17.  Further, the N126 Project area overlaps with lands managed under the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937 (O&C Act), 43 U.S.C. § 2601, which helps ensure a steady supply of timber for the local forest products infrastructure.  Geissler Decl. ¶¶ 19, 30.  The N126 Project, and future site-specific projects approved under the N126 Project—including the Pucker Up and Gone Fishin' Projects—will generate important timber receipts for rural counties.  *Id.* ¶¶ 6, 19, 30.

Third, Proposed Intervenor's significant protectable interests will be adversely affected if Plaintiff is successful in enjoining the commercial harvest activities authorized under the N126 Project, vacating the N126 Project's EA, FONSI, and DR, and vacating the DRs and DNAs for the Pucker Up and Gone Fishin' Projects authorized under the N126 Project.  AFRC's members are reliant on the timber volume the N126 Project will generate over the next 19 years.  *Id.* ¶¶ 18, 30.

Fourth, Federal Defendants do not adequately represent Proposed Intervenor's interests in this litigation because their responsibilities are broader than AFRC's local and economic interests.  Thus, intervention as of right is warranted.

In the alternative, this Court may grant permissive intervention under FRCP 24(b) because Proposed Intervenor's claims and defenses share common questions of law and fact with

the main action here.  This motion is supported by the accompanying Memorandum, Declaration

of Andy Geissler, and Proposed Answer.

**MEMORANDUM**

## I.    INTRODUCTION

Pursuant to FRCP 24, Proposed Intervenor respectfully moves to intervene as a

defendant.  AFRC has significant protectable economic, social, and ecological interests in

ensuring active forest management occurs throughout northwestern Oregon.  Plaintiff seeks an

injunction and vacatur of the N126, Pucker Up, and Gone Fishin' Projects.  Am. Compl. at 27-28

(Plaintiff's Request for Relief).  Plaintiff specifically seeks to prohibit commercial harvest

activities in the Late Successional Reserve (LSR) and Riparian Reserves, which are two land use

allocations (LUAs) under the 2016 Northwestern and Coastal Oregon Resource Management

Plan (2016 RMP).

The N126 Project's EA analyzes a treatment area of approximately 31,470 acres within

the BLM's Northwest District.  Geissler Decl. ¶¶ 18-19; *see* N126 Project EA at 1.[1]  The N126

Project authorizes commercial treatment in the LSR and Riparian Reserves LUAs and is

expected to generate approximately 380 million board feet (mmbf) over a 19-year period.  *Id.* ¶¶

20, 30.  In addition, all 31,470 acres of the N126 Project area are located on O&C lands, which

are managed pursuant to the O&C Act.  *Id.* ¶ 19.  The O&C Act requires that timber from O&C

lands be harvested for "permanent forest production, and the timber thereon shall be sold, cut,

and removed in conformity with the princip[le] of sustained yield for the purpose of providing a

---

[1] Bureau of Land Mgmt., N126 LSR Landscape Plan Environmental Assessment, *available at*
https://eplanning.blm.gov/public_projects/117556/200284509/20035181/250041378/20210219_
N126%20LSR%20Landscape%20Plan%20EA_EA_Final%20With%20Cost%20Updated.pdf
(last visited Nov. 8, 2023).

permanent source of timber supply[] . . . ." 43 U.S.C. § 2601. These lands are important to ensure a steady, local supply for the local forest products infrastructure. In addition, O&C Counties are eligible to receive 50% of the revenues generated from O&C lands.[2] 43 U.S.C. §§ 2601, 2605(a); Geissler Decl. ¶ 19.

Under the N126 Project, the Pucker Up and Gone Fishin' Projects authorize approximately 595 acres of commercial treatment in the LSR and Riparian Reserves LUAs, generating approximately 13.4 mmbf. Geissler Decl. ¶ 21. AFRC's members are frequent purchasers of timber sales in northwestern Oregon on BLM-administered lands in the Northwest District. *Id*. ¶ 6. AFRC advocates for the BLM to implement treatments in LSR and Riparian Reserve LUAs, as directed by the 2016 RMP. *Id*. ¶¶ 18, 23-26. In addition, treatments in LSRs and Riparian Reserves that overlap with O&C lands help support jobs and local economies, essential public services, and healthy resilient forests. *Id*. ¶¶ 19, 30. The N126 Project and the site-specific Pucker Up and Gone Fishin' Projects are examples of necessary forest management actions located on O&C lands. *Id*. ¶ 36.

Proposed Intervenor has concrete interests in the N126 Project, including the site-specific Pucker Up and Gone Fishin' Projects. Plaintiff seeks to halt the N126 Project, and site-specific projects, even though the activities will speed the development and improve the quality of complex late-successional forest characteristics of stands in the project area over the long term. *Id*. ¶¶ 23-26. AFRC and its members would be adversely affected if the analysis and decisions, and subsequent projects, are vacated or delayed. This motion is timely, and the other parties do not adequately represent Proposed Intervenor. Therefore, this Court should grant Proposed

---

[2] However, because federal timber harvests have dropped precipitously, and O&C receipts have declined proportionately, Congress has authorized payments under the Secure Rural Schools Act, which allows counties to select these funds in lieu of the diminished funds through the O&C Act. *See* 16 U.S.C. §§ 7101-7153.

Intervenor's motion for intervention as of right under FRCP 24(a)(2). In the alternative, this Court may grant Proposed Intervenor's request for permissive intervention under FRCP 24(b).

## II.    FACTUAL BACKGROUND

AFRC is a regional trade association whose purpose is to advocate for sustained-yield timber harvest on public timberlands throughout the West to enhance forest health and resistance to fire, insects, and disease. Geissler Decl. ¶ 3. AFRC's members are frequent purchasers of timber sales offered by the BLM, including BLM-administered lands in the Northwest District. *Id*. ¶ 6. For decades, AFRC has promoted active management to ensure productive public forests and maintain forest resiliency, protect adjoining private forests, and promote community stability. *Id*. ¶¶ 3, 6. AFRC frequently participates in the planning, environmental analysis, and decision-making processes for BLM projects, helping to ensure that projects adhere to the applicable resource management plans and governing federal legislation, including the N126 Project. *Id*. ¶¶ 4-5, 26. In AFRC's scoping comments and comments on the preliminary N126 Project EA, AFRC stressed the importance of active forest management for meeting the objectives and direction of the 2016 RMP, including the need for commercial treatment in the LSR and Riparian Reserve LUAs. *Id*. ¶ 26; *see id.*, Exs. A-C.

In planning the N126 Project, the BLM determined that the Project will restore complex late-successional forests and ensure stands are able to support riparian areas. *Id*. ¶¶ 18, 24; *see* N126 Project EA at 5-7. Although LSRs are mainly managed to support late-seral dependent wildlife species—such as the northern spotted owl (NSO) and marbled murrelet—the 2016 RMP's LSR management direction also seeks to promote stands of older structure and maintain habitat for NSO in stands that currently do not meet the suitable habitat criteria. *Id*. ¶¶ 23-24. The N126 Project will be implemented over a 19-year period and is designed to speed the

development and improve the quality of complex late-successional forest characteristics of stands in the project area over the long term. *Id*. ¶ 18.

After the catastrophic 2020 Labor Day wildfires, which burned nearly 130,000 acres of BLM-lands, AFRC has strong concerns about the vulnerability in the Project and surrounding area, and the need for treatment. *Id*. ¶¶ 8, 11, 13, 29. An injunction or vacatur of the N126 Project would foreclose the opportunity to harvest 380 mmbf of timber from BLM-administered lands in the Northwestern District, which is an important component of the timber volume in this area to sustain the forest products industry. *Id*. ¶¶ 20, 30. Reduction in the volume of timber harvested off of BLM-administered lands will negatively affect AFRC and its members, who have a strong interest in maintaining the economic vitality of rural northwestern Oregon counties and the availability of family-wage jobs that the forest products industry provides. *Id*. ¶¶ 6, 28; *see* ¶¶ 7-8, 11, 17.

## III.    ARGUMENT

### A.  Legal Standard for Intervention.

A party may intervene as a matter of right when: (1) the movant's motion is timely; (2) the movant asserts an interest relating to the property or transaction that is the subject of the action; (3) the movant is so situated that, without intervention, the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the movant's interest is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2).

FRCP 24(a)(2) "does not require a specific legal or equitable interest." *Wilderness Soc'y v. U.S. Forest Serv*., 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*). Rather, "[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id*. Moreover, an applicant's interest in

litigation is sufficient for purposes of FRCP 24 so long as "it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* The court accepts as true the nonconclusory allegations and evidence submitted in support of a motion to intervene. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Further, an organization may intervene on behalf of its members.[3]  *Id.* at 821 n.3.

In 2011, the Ninth Circuit, sitting *en banc*, abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based *solely* on FRCP 24 intervention factors. *Wilderness Soc'y*, 630 F.3d at 1177, 1179-81. The unanimous *en banc* panel confirmed that an asserted interest need only relate to the "property or transaction that is the subject of the action" and that it was improper to "focus[] on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit" in evaluating a motion for intervention. *Id.* at 1178 (quoting Fed. R. Civ. P. 24(a)). The Ninth Circuit thus reaffirmed that FRCP 24 is constructed "broadly in favor of proposed intervenors." *Id*. at 1179.

Under FRCP 24(b), a court has discretion to grant permissive intervention to anyone who, upon making a timely motion, has a claim or defense that shares a common question of law or fact with the main action. In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Id*. Compared with intervention as of right, a district court has broad discretion in determining whether to grant a motion for permissive intervention under FRCP 24(b). *See generally*

---

[3] An organization may intervene on behalf of its members so long as it shows "(1) members have a legally protectable interest sufficient for intervention; (2) the defense of the [decision is] germane to the associations' purposes; and (3) individual [members] are not necessary participants in the suit." *Berg*, 268 F.3d at 821 n.3. Proposed Intervenor AFRC has made these showings here.

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-11 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173.  Thus, unlike intervention as of right, permissive intervention does not require a protectable interest or inadequacy of representation, and "plainly dispenses with any requirement that the intervenor shall have direct personal or pecuniary interest in the subject of the litigation."  *Id*. at 1108 (internal quotation marks omitted).

**B.  Proposed Intervenor Is Entitled to Intervene as of Right.**

**1.    The motion is timely.**

Proposed Intervenor meets the standards for intervention as of right.  First, the motion is timely.  In determining whether a motion is timely, three factors are weighed: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay.  *Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).  The key consideration is whether intervention will prejudice the existing parties.  *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 857 (9th Cir. 2016).

Proposed Intervenor's motion is timely.  Plaintiff filed their Amended Complaint on September 7, 2023.  Am. Compl. (ECF No. 29).  Federal Defendants filed their Answer to the Amended Complaint on September 21, 2023.  Answer (ECF No. 30).  Thus, though the original complaint was filed back on May 2, 2022 (ECF No. 1), the case is still in its early stages.

Intervention at this stage of the case would not prejudice the existing parties because no party has engaged in any substantive proceedings at this time.  Courts have held that intervening before merits briefing or a ruling on the merits is timely.  *See, e.g.*, *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (holding that the motion for intervention was timely when it was filed shortly after the complaint); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding a motion to intervene was timely when filed "before any

hearings or rulings on substantive matters"); *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (recognizing that "the mere lapse of time, without more, is not necessarily a bar to intervention" (internal quotation marks omitted)).  Thus, Proposed Intervenor's motion here is timely.

> **2.    Proposed Intervenor has significant interests that are related to the subject matter of the litigation.**

The significantly protectable interest requirement is a "practical, threshold inquiry" used to "dispos[e] of lawsuits by involving as many apparently concerned parties as is compatible with efficiency and due process."  *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks and citations omitted).  The Ninth Circuit liberally construes FRCP 24(a) in favor or proposed intervenors and there is no "clear-cut [test] or bright-line rule" for determining whether a movant has such an interest.  *Id.*  That said, it generally is "enough that the [proposed intervenor's] interest is protectable under some law" and "there is a relationship between the legally protected interests and the claims at issue."  *Wilderness Soc'y*, 630 F.3d at 1180 (internal quotation marks omitted).

Proposed Intervenor has protectable interests at stake in this case.  AFRC's members have economic interests in the N126 Project, since they have purchased the first five timber sales implementing the Project (Pucker Up, Gone Fishin', Walker Point, Upper Greenleaf, and Cefir Miles timber sales).  Geissler Decl. ¶ 27.  AFRC's members also have an economic interest in any timber sales associated with future projects that would be approved under the N126 Project, because they are the likely purchasers of those timber sales, and/or will process the timber volume at their facilities.  *Id*. ¶¶ 6, 27.

In addition, AFRC members also have an interest in a reliable supply of timber available for local sawmills and downstream production of forest products, as well as the much needed

family-wage jobs these mills support in rural areas. *Id.* ¶¶ 6, 28, *see* ¶¶ 7-8, 11, 17. AFRC members B&G Logging and Construction, Sierra Pacific Industries, Freres Engineered Wood, Boise Cascade, Swanson Group, and Rosboro, heavily rely on BLM timber sales to sustain their operations currently and into the future. *Id.* ¶¶ 6-17; *see also id.* ¶ 6 (noting that because many of AFRC's members do not own private timberland, they depend heavily on federal lands to source raw materials for their milling operations).

Timber companies and loggers "have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3rd Cir. 1998) (reversing denial of motion to intervene by timber companies and groups in environmental litigation). Therefore, companies that use public timber have "a broader interest in any litigation that might impede [their] ability to obtain timber from federal lands in the future." *Ctr. For Biological Diversity v. Gould*, No. 1:15-CV-01329-WBS-GSA, 2015 WL 6951295, at *2 (E.D. Cal. Nov. 10, 2015); *cf. N. Cascades Conservation Council v. U.S. Forest Serv.*, No. 2:20-CV-01321-RAJ-BAT, 2021 WL 871421, at *3 (W.D. Wash. Mar. 9, 2021).

Beyond its economic interest, Proposed Intervenor has a strong interest in wildfire mitigation and forest resiliency efforts on federal lands, including policies and decisions that affect the beneficial use of Oregon's public lands or which may pose significant risks to their members. Geissler Decl. ¶¶ 26, 29, Exs. A-C. (discussing AFRC's involvement in the planning process for the N126 Project). Due to the risk of uncharacteristic wildfires in northwestern Oregon, Proposed Intervenor has an interest in fire resiliency across all BLM land allocations, including LSR, to ensure a sustainable supply of timber into the future. *Id.* ¶¶ 29-30. Not only will the Projects' proposed treatments in the LSR and Riparian Reserves LUAs help reduce the

risk of losing late-successional habitat to uncharacteristic wildfires, but those treatments will also help protect adjacent forest stands in the Harvest Land Base, which are specifically managed for sustained-yield timber production. *Id*. ¶¶ 23, 29.

Such interests have long been recognized to be sufficient for intervention. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496-97 (9th Cir. 1995), *abrogated by Wilderness Soc.*, 630 F.3d 1173 (holding interests such as public safety and forest health asserted were significantly protectable interests); *accord Hells Canyon Pres. Council v. Stein*, No. 2:17-CV-00843-SU, 2017 WL 3641419, at *2 (D. Or. Aug. 24, 2017) (granting intervention because the proposed intervenors "have an interest in fire reduction near their land"). Accordingly, Proposed Intervenor has both economic and other protectable interests that support intervention as of right in this case. *See Wilderness Soc'y*, 630 F.3d at 1180.

### 3.    Proposed Intervenor would be impaired by the disposition of this litigation.

"'[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, [the absentee] should, as a general rule, be entitled to intervene.'" *Berg*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes). The third factor of FRCP 24(a)(2) often follows as a matter of course if the second factor is met. *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *Native Ecosystem Council v. Marten*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (D. Mont. May 24, 2018) ("On a broader scale, if Plaintiffs are successful in challenging the Farm Bill categorical exclusion, it will also affect future contracts and employment for members of the logging associations."); *Seattle Audubon v. Sutherland*, No. 06-CV-1608MJP, 2007 WL 130324, at *3 (W.D. Wash. Jan.

16, 2007) (holding that an injunction would impair the proposed intervenor trade associations' interests in harvesting timber resources from private forest land and would "limit the amount of timber resources available on Washington state private lands for the forest, pulp, paperboard, and wood products industry").

Here, Plaintiff's requested relief would have legal and practical effects on the interests of Proposed Intervenor.  Plaintiff's requested remedy would impair AFRC's members who have purchased timber sales associated with the N126 Project and who are likely to purchase futures timber sales, if the N126 Project is allowed to continue.  In addition, AFRC has interests in a sustainable timber supply now and into the future and forest health and fire resiliency, which would be impaired if Plaintiff was successful in halting the Project.  Geissler Decl. ¶¶ 30-32. Because Plaintiff's requested relief would adversely affect Proposed Intervenor's rights and interests, the third intervention factor is satisfied.

### 4. Proposed Intervenor is not adequately represented by the existing parties.

Finally, Proposed Intervenor would not be adequately represented by the existing parties. An "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation *may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498.  This prong is satisfied where a movant's interests are "potentially more narrow than the public's at large" and where government representation of those interests "'*may have been* inadequate.'" *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (quoting *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998)) (emphasis added).  *Allied* reversed a district court's denial of intervention, 904 F.3d at 1068; *Mendonca* affirmed a grant of intervention to a similar group, holding this factor was satisfied because the movant's interests were "potentially more narrow and parochial

than the interests of the public at large." *Mendonca*, 152 F.3d at 1190.

A proposed intervenor is adequately represented *only if* "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect." *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998). "The most important factor in assessing the adequacy of representation is 'how the interest compares with the interests of the existing parties.'" *Citizens of Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (internal quotation marks omitted).

Here, Proposed Intervenor will not be adequately represented by Plaintiff or by Federal Defendants. Geissler Decl. ¶¶ 33-35. Plaintiff wants to set aside the BLM's decision with respect to the N126 Project, and the site-specific Pucker Up, and Gone Fishin' Projects, which is contrary to Proposed Intervenor's interests.

Moreover, Proposed Intervenor's interests are narrower in scope than Federal Defendants' interests. While the agency has an interest in forest health, reducing insect and disease outbreaks, and preventing catastrophic wildfire, AFRC members have direct economic, ecological, and other interests at stake that Federal Defendants do not share. *Id*. ¶¶ 34-35. Stated another way, Federal Defendants have a broader public interest than Proposed Intervenor. *See Forest Conservation Council*, 66 F.3d at 1499 (holding that a federal agency "is required to represent a broader view than the more narrow, parochial interest of the State of Arizona and Apache County"); *Mont. Elders for a Livable Tomorrow v. U.S. Office of Surface Mining*, No. 15-CV-106-M-DWM, 2015 WL 12748263, at *1 (D. Mont. Dec. 11, 2015) (finding this factor satisfied where movant had "a personal interest that does not belong to the general public and

because Plaintiffs and Defendants are representing the public interest"); *Native Ecosystem Council*, 2018 WL 2364293, at *2 (noting that while both the Forest Service and proposed defendant-intervenors seek to defend the regulatory process that was followed in this case, their ultimate goals are different).

As recognized in *Berg*, a federal agency cannot be expected to protect the actual community-level and economic interests of Proposed Intervenor. *Berg*, 268 F.3d at 823 (holding that the developer's and building trade associations' interests were not adequately represented by federal and municipal defendants in an Environmental Species Act challenge to the City of San Diego's comprehensive land management plan). Thus, inadequate representation exists here where Federal Defendants' broader interests do not align with Proposed Intervenor's economic, social, and ecological (forest health) interests. *See* Geissler Decl. ¶ 34 (examples of cases where AFRC successfully intervened in challenges to agency actions). Accordingly, Proposed Intervenor has met the minimal showing required to demonstrate that the existing parties do not adequately represent their interests.

For the abovementioned reasons, there is sufficient divergence between Proposed Intervenor and Federal Defendants such that intervention is justified. Proposed Intervenor meets the requirements for intervention as of right under FRCP 24(a) to defend the N126, Pucker Up, and Gone Fishin' Projects.

### C.  Alternatively, the Court May Grant Permissive Intervention.

Given these clear interests in this case, Proposed Intervenor believes it meets the standard for intervention as of right under FRCP 24(a) and that permissive intervention is unnecessary here. Nevertheless, out of an abundance of caution, Proposed Intervenor alternatively moves for permissive intervention under FRCP 24(b).

[PROPOSED] DEFENDANT-INTERVENOR'S MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT - 14

District courts have broad discretion to grant permissive intervention. Fed. R. Civ. P. 24(b). So long as an applicant's motion is timely and its "claim or defense that shares with the main action a common question of law or fact," a court may grant permissive intervention. *Id.* As timeliness is established, the sole issue for the court to consider is whether the proposed intervenor "assert[s] a claim or defense in common with the main action." *Kootenai Tribe*, 313 F.3d at 1110. In *Kootenai Tribe*, environmental groups were allowed to intervene under FRCP 24(b) where they asserted "defenses of the Roadless Rule directly responsive to the claim for injunction," along with "an interest in the use and enjoyment of roadless lands, and in the conservation of roadless lands, in the national forest lands subject to the Roadless Rule . . . ." *Id.* at 1110-11. Similarly, the Ninth Circuit more recently found that resource industry associations were improperly denied permissive intervention to defend a Fish and Wildlife Service rule delisting the gray wolf given their unique interests and expertise on the issue. *See Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-16382, 2022 WL 3656444, at *1 (9th Cir. Aug. 24, 2022) (finding the district court failed to consider their unique interest and expertise, and that the current parties would not undoubtedly make all the same arguments as proposed intervenors).

Proposed Intervenor seeks to participate to defend the commercial harvest treatments authorized under the N126, Pucker Up, and Gone Fishin' Projects. Proposed Intervenor asserts defenses against the main action, which share common questions of law and fact. This Court would benefit from hearing from Proposed Intervenor about the legal issues and repercussions of an injunction and vacatur because AFRC's members will be the ones who will suffer the most harm from the loss of the timber sales authorized under the N126 Project and implemented by the Pucker Up, Gone Fishin', and any future timber sales approved under the N126 Project. Proposed Intervenor has an interest in the BLM's ability to conduct treatments in the LSR and

Riparian Reserve LUAs, in accordance with the 2016 RMP, in a timely and economic manner.

This Court should grant permissive intervention even if it denies intervention as of right.

## IV.    CONCLUSION

For the forgoing reasons, Proposed Intervenor American Forest Resource Council

respectfully requests that the Court grant their motion to intervene.

Dated this 9th day of November, 2023.

/s/ Sara Ghafouri
Sara Ghafouri, OSB #111021
Sarah Melton, OSB #227050
American Forest Resource Council
700 N.E. Multnomah, Suite 320
Portland, Oregon 97232
Telephone: (503) 222-9505
Fax: (503) 222-3255
sghafouri@amforest.org
smelton@amforest.org

Attorneys for Proposed Defendant-Intervenor

**CERTIFICATE OF SERVICE**

I, Sara Ghafouri, hereby certify that I, on November 9, 2023, caused the foregoing to be served upon counsel of record through the Court's electronic service system.

Dated this 9th day of November, 2023.


<u>/s/ Sara Ghafouri</u>
Sara Ghafouri