**SCOTT E. BRADFORD, OSB # 062824**
United States Attorney
District of Oregon
**SEAN E. MARTIN, OSB # 054338**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
sean.martin@usdoj.gov
Telephone:  (503) 727-1010
        Attorneys for Defendants


# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# EUGENE DIVISION


**CASCADIA WILDLANDS,**

        Plaintiff,

v.

**CHERYL ADCOCK; PAUL TIGAN**; and **U.S. BUREAU OF LAND MANAGEMENT**,

        Defendants,

and

**AMERICAN FOREST RESOURCE COUNCIL**,

        Defendant-Intervenor.

**Case No. 6:22-cv-00767-AA**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND OTHER EXPENSES**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

FACTUAL BACKGROUND ............................................................................... 1

LEGAL BACKGROUND ................................................................................... 3

ARGUMENT ..................................................................................................... 4

    I.    Plaintiff is not entitled to an EAJA award, because Defendants' position was substantially justified ...................................................... 4

    II.    Any award to Plaintiff should be substantially reduced to account for Plaintiff's limited success ................................................................ 9

    III.    This Court should reduce the lodestar fees amount to account for excessive high-rate billing and non-compensable time .................... 13

        A.    Plaintiff fails to establish that four lawyers billing enhanced rates were necessary in this case and that no attorneys were available at the statutory maximum rate .................................... 13

        B.    This Court should reduce the lodestar fees amount to account for billing on non-compensable work ........................................... 16

            1.    This Court should not award any fees for work in agency administrative proceedings ......................................... 16

            2.    This Court should not award any fees for work on a preliminary injunction motion that was never filed ................... 17

            3.    This Court should not award fees for John Mellgren's unsupported work ........................................................ 18

            4.    This Court should not award fees for reviewing time sheets and fee declarations, and enhanced rates are inappropriate for fee-motion work ....................................... 19

CONCLUSION ................................................................................................ 21

CERTIFICATE OF COMPLIANCE.................................................................. 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Al-Harbi v. INS*, 284 F.3d 1080 (9th Cir. 2002) .............................................. 4-5

*All. for the Wild Rockies, Inc. v. Allen*, No. 04-1813-JO, 2010 WL 1008224
    (D. Or. March 15, 2010) ................................................................................ 15

*All. for the Wild Rockies v. Savage*, No. CV 15-54-M-DLC,
    2019 WL 3293425 (D. Mont. July 22, 2019) .................................................. 12

*Andrew v. Bowen*, 837 F.2d 875 (9th Cir. 1988) ................................................. 5

*Aubudon Soc'y of Portland v. U.S. Nat. Res. Conservation Serv.*,
    No. 10-cv-1205-HZ, 2012 WL 4829189 (D. Or. Oct. 8, 2012) ...................... 19

*Cascadia Wildlands v. BLM*, 153 F. 4th 869 (9th Cir. 2025) .................... 6-7, 8

*Cascadia Wildlands v. BLM*, 987 F. Supp. 2d 1085 (D. Or. 2013) ............. 11-12

*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,
    305 F.3d 943 (9th Cir. 2002) ......................................................................... 12

*Forestkeeper v. U.S. Forest Serv.*, No. CV F 09–392 LJO JLT,
    2011 WL 2946176 (E.D. Cal. July 21, 2011) ............................................ 14-15

*Gonzales v. Free Speech Coal.*, 408 F.3d 613 (9th Cir. 2005) ............................ 4

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................. 3, 9, 13, 14, 16

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*,
    No. 07–CV–358–PK, 2008 WL 4866063 (D. Or. Nov. 5, 2008) ................... 19

*Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988) ...................................................... 8

*Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991) ............................... 3, 4, 13-14, 15

*Lucas v. White*, 63 F. Supp. 2d 1046 (N.D. Cal. 1999) .................................... 20

*McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085 (D. Or. 2016) ........... 19

*Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152 (9th Cir. 2008) ............ 14

*Native Ecosystems Council v. Weldon*, 921 F. Supp. 2d 1069 (D. Mont. 2013) .................................................................................................................. 20

*Or. Nat. Desert Ass'n v. BLM*, 223 F. Supp. 3d 1147 (D. Or. 2016) ............... 15

*Or. Nat. Desert Ass'n v. McDaniel*, No. 06-cv-242-AA, 2011 WL 4625715 (D. Or. Sept. 30, 2011) ................................................ 11, 17

*Or. Nat. Res. Council Fund v. Brong*, 492 F.3d 1120 (9th Cir. 2007) ........................................................................................... 8

*Pierce v. Underwood*, 487 U.S. 552 (1988) ................................................. 4, 7, 8

*Renee v. Duncan*, 686 F.3d 1002 (9th Cir. 2012) ............................................... 4

*Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983) ............................................. 3

*S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. C–09–5676 EMC, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011) .................................................... 12

*Sam K. v. Hawaii Dep't of Educ.*, 788 F.3d 1033 (9th Cir. 2015) ............... 20-21

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 145 S. Ct. 1497 (2025) ........................................................................... 5, 6, 7

*Sorenson v. Concannon*, 161 F. Supp. 2d 1164 (D. Or. 2001) ......................... 20

*Steward v. Gates*, 987 F.2d 1450 (9th Cir. 1993) ............................................ 14

*Sullivan v. Hudson*, 490 U.S. 877 (1989) ......................................................... 3

*Thangajara v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) .................................. 7-8

*United States v. 22249 Dolorosa St.*, 190 F.3d 977 (9th Cir. 1999)................. 16

*W. Watersheds Proj. v. U.S. Dep't of the Interior*, 677 F.3d 922 (9th Cir. 2012) ......................................................................................... 17

iv

## FEDERAL STATUTES

28 U.S.C. § 2412(d)(1)(A) .......................................................... 3, 4, 17

28 U.S.C. § 2412(d)(2)(A) .............................................................. 3-4

Defendants respond to Plaintiff's Motion for Attorneys' Fees, Costs, and Other Expenses (ECF 58). This Court should deny the motion because Defendants' position was substantially justified. In the alternative, given Plaintiff's limited success, this Court should award no more than 50 percent of Plaintiff's requested fees. This should occur <u>after</u> this Court makes reductions to the lodestar amount to account for excessive enhanced-rate attorney staffing and Plaintiff's billing for non-compensable tasks.

## FACTUAL BACKGROUND

Two Plaintiffs, Cascadia Wildlands and Oregon Wild, originally brought this action to challenge the U.S. Bureau of Land Management's ("BLM") N126 project under the Administrative Procedure Act ("APA"). N126 is a BLM program of work to restore late-successional forest characteristics and riparian habitats using targeted thinning. The two Plaintiffs alleged procedural National Environmental Policy Act ("NEPA") claims and a substantive Federal Land Policy and Management Act ("FLPMA") claim. *See* ECF 1.

Prior to merits briefing, Plaintiff Oregon Wild dropped out of the case and the single remaining Plaintiff, Cascadia Wildlands, dropped its FLPMA claim and proceeded on amended NEPA claims. *See* ECF 29.

The parties briefed cross-motions for summary judgment on the merits

of the NEPA claims and this Court ruled for Defendants on most claims. ECF 50.[1]

After this Court's merits ruling, the parties filed a stipulated remedy proposal. ECF 51. Under the proposal, BLM would continue to implement nine already-purchased timber sales under N126, including the Gone Fishin' and Pucker Up sales. *Id*. BLM would also implement seven identified future timber sales. *Id*. Beyond those sixteen timber sales, BLM agreed not to authorize additional sales under the N126 Environmental Assessment ("EA") and agreed to remand of the N126 EA and Finding of No Significant Impact ("FONSI"). *Id*. Pursuant to the terms of the parties' proposal, this Court issued a judgment dismissing this action. ECF 54.

After this Court entered its judgment, Plaintiff filed the instant motion for fees and costs under the Equal Access to Justice Act ("EAJA"). ECF 58. Plaintiff seeks an award of $236,068.18 in fees, spread among five different attorneys. For four of the five attorneys, Plaintiff seeks hourly rates exceeding the EAJA statutory maximum. Plaintiff also seeks $500.44 in

---

[1] This Court identified nine NEPA issues, ruling for BLM on five, including the lead "hard look" issue and the lead "significance" issue. *See* ECF 50, pp. 15-46.

costs.[2]

## LEGAL BACKGROUND

A party prevailing in a civil action against a federal agency may be eligible for an award of certain fees and costs under EAJA. *See* 28 U.S.C. § 2412(d)(1)(A).  If a prevailing party is eligible, EAJA allows an award unless the government's position was "substantially justified" or "special circumstances" would make an award unjust.  *Sullivan v. Hudson*, 490 U.S. 877, 883-84 (1989).

As a waiver of the United States' sovereign immunity, EAJA is strictly construed in favor of the government, and a movant's burden to establish entitlement to fees must be rigorously observed.  *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983); *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).  The party seeking fees must demonstrate that its requested award is reasonable.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Under EAJA, there is a statutory maximum rate of $125/hour for attorneys that is adjusted for cost of living increases. 28 U.S.C. §

---

[2] The parties discussed settling the instant EAJA matter but did not reach common ground; Plaintiff did not extend a counteroffer to Defendants' August 2025 settlement offer.

Page 3       Response to Motion for Attorneys' Fees; *Cascadia Wildlands v. Adcock, et al.*, Case No. 6:22-cv-00767-AA

2412(d)(2)(A).[3]  A court may award above the statutory maximum rate only if an attorney possesses distinctive knowledge and skills developed through a practice specialty, those skills are needed in the litigation, and they are not available elsewhere at the statutory rate.  *See Love*, 924 F.2d at 1496.

## ARGUMENT

### I.    Plaintiff is not entitled to an EAJA award, because Defendants' position was substantially justified.

EAJA precludes a fee award when a government agency's position was "substantially justified."    28 U.S.C. § 2412(d)(1)(A).    This threshold determination evaluates whether Defendants' position was "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (cleaned up).  If a government agency does not prevail on its position, that "does not invoke a presumption that [it] was not substantially justified." *Renee v. Duncan*, 686 F.3d 1002, 1017 (9th Cir. 2012).    The reasonableness of the agency's position does not depend on the outcome of the litigation.  *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 620 (9th Cir. 2005).  This Court makes a single substantial-justification determination, considering the case "as an inclusive

---

[3] The adjusted maximum EAJA hourly rates are published at https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited December 2, 2025).  The maximum hourly rate for 2024 and 2025 is $251.84.

Page 4        Response to Motion for Attorneys' Fees; *Cascadia Wildlands v. Adcock, et al.*, Case No. 6:22-cv-00767-AA

whole, rather than atomized line items." *Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002) (cleaned up). *See also Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir. 1988) (in the EAJA context, "arbitrary and capricious conduct is not per se unreasonable").

Substantial justification exists here. **First,** Defendants prevailed against most of the NEPA claims, including Plaintiff's lead claim regarding N126's effects on northern spotted owls. *See* ECF 50 at pp. 15-24. **Second,** although Defendants did not prevail on one of Plaintiff's two NEPA claims regarding sedimentation, BLM's position on that claim was substantially justified. As this Court found, BLM "undertook thorough, detailed calculations" to estimate how much sediment would enter streams and entirely ruled for BLM regarding sedimentation related to landslide/slope instability. ECF 50 at 28, 29-32. That BLM calculated sediment delivery volume to streams and assessed the percentage increase over existing conditions from the project shows substantial justification. As *Seven County* established, "NEPA does not require an agency to weigh environmental consequences in any particular way," and "whether a particular report is detailed enough in a particular case [] requires the exercise of agency discretion." 145 S. Ct. at 1507, 1512. Further, it is salient that Plaintiff itself failed to articulate any summary judgment argument why BLM's sedimentation-delivery analysis was

insufficient.

**Third,** regarding the NEPA significance of N126's effects on murrelets, although Defendants did not prevail in part, BLM's position was substantially justified. This Court found that the N126 analysis contained a detailed analysis of direct and indirect effects to murrelets and a convincing statement of reasons as to why N126's effects "are not significant" in these regards. ECF 50 at 42. This Court identified a single aspect related to murrelets—new road construction—where BLM acknowledged an adverse effect but did not adequately explain why the effect would be insignificant under NEPA. *Id.* at 43. For EAJA purposes, BLM's position was substantially justified. The agency acknowledged that road construction would affect murrelet habitat but found no significant NEPA effects overall; the project was consistent with the underlying effects analysis undertaken for BLM's governing Resource Management Plan ("RMP"). AR_00316-17. This finding "fall[s] within a broad zone of reasonableness." *Seven Cnty.*, 145 S. Ct. at 1513. As the Ninth Circuit emphasized this year, "[courts] will not micromanage or unduly scrutinize the agency's assessment as the level of detail to provide on the murrelet issue." *Cascadia Wildlands v. BLM*, 153 F. 4th 869, 903 (9th Cir. 2025). *See also id.* at 905 (finding that BLM permissibly concluded that although a project "would doubtless have some impact on murrelets . . . there did not need to be an

exhaustively detailed discussion of the issue").

**Finally,** Defendants lost on two NEPA claims relating to the effects of another agency's project (the U.S. Forest Service's Deadwood Creek project), but it is controlling law that agencies under NEPA "are not required to analyze the effects of projects over which they do not exercise regulatory authority." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 145 S. Ct. 1497, 1516 (2025). BLM has no regulatory authority over the Forest Service's land management work or over Forest Service lands, and NEPA therefore does not require that BLM analyze the effects of the separate Forest Service project. Defendants' position is substantially justified. "The effects from a separate project may be factually foreseeable, but that does not mean that those effects are relevant to the agency's decisionmaking process or that it is reasonable to hold the agency responsible for those effects." *Id*.

When considered as an inclusive whole, Defendants' position was substantially justified. *See Pierce*, 487 U.S. at 569 (it is conceivable that "the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose"). Plaintiff attempts to liken this case to *Thangajara v. Gonzales*, 428 F.3d 870 (9th Cir. 2005) but the circumstances there were far afield. Mot. 3. In *Thangajara*, the government defended an unsupported immigration

administrative decision without reference to controlling Ninth Circuit precedent. 428 F.3d at 874-75. Here, by contrast, Defendants prevailed on most of the claims before this Court and BLM's defense is otherwise supported by NEPA precedents and the underlying record. That BLM lost on a subset of Plaintiff's claims does not establish that its position was not substantially justified. *See Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

To try to show that BLM was not substantially justified, Plaintiff relies on *Oregon Natural Resources Council Fund v. Brong*, 492 F.3d 1120, 1130 (9th Cir. 2007). Mot. 3. But that citation addressed a substantive FLPMA claim, not a procedural NEPA claim, and Plaintiff here voluntarily dropped its FLPMA claim before summary judgment. NEPA is "purely procedural" and "imposes no substantive environmental obligations or restrictions," and "the role the judicial branch plays in policing NEPA compliance is a limited one." *Cascadia Wildlands*, 153 F.4th at 879-80, 903 (cleaned up).

The totality of the circumstances shows that Defendants' position was substantially justified. *See Pierce*, 487 U.S. at 566 n.2 ("[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct . . . .").

For these reasons, this Court should deny Plaintiff's motion.

## II.    Any award to Plaintiff should be substantially reduced to account for Plaintiff's limited success.

In the alternative, if this Court finds that Plaintiff surmounts a substantial justification finding, it should award no more than 50% of the requested fees to account for Plaintiff's limited success. This Court should calculate this reduced award after it makes appropriate lodestar reductions to fees as described below in Argument section III.[4]

"[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). This Court retains discretion to determine, under all the circumstances, what constitutes a "reasonable" fee. *Id.* at 433.

Plaintiff here achieved only limited success, obtaining just a fraction of the relief it sought in its complaint. Illustratively, in its operative complaint Plaintiff sought an order vacating the Pucker Up and Gone Fishin' timber sale decisions under N126 and withdrawing "any associated contracts" from those timber sales. ECF 29, Request for Relief c) and d). But Plaintiff failed in obtaining that relief. Instead, Plaintiff agreed to continued implementation— including ground operations—for both timber sales. ECF 51, p. 2. Similarly,

---

[4] If this Court finds that Plaintiff surmounts a finding of substantial justification, Defendants do not contest Plaintiff's requested costs of $500.44.

Plaintiff in its operative complaint sought an order vacating the N126 decision record, N126 EA, and N126 FONSI, and withdrawing any associated contracts. ECF 29, Request for Relief b). But Plaintiff achieved no success on this requested relief. Instead, Plaintiff agreed to implementation of sixteen timber sales under N126—including seven sales that did not yet have decision records and were not yet purchased by timber contractors—and BLM agreed to a remand of the FONSI and EA, not a vacatur. ECF 51, p. 2. Plaintiff's operative complaint also requested an injunction against BLM and its contractors to prevent N126 implementation. ECF 29, Request for Relief e). But Plaintiff obtained no such injunction. *See* ECF 51.

Implementation of the sixteen N126 timber sales, after this Court ruled on the merits, will allow for timber harvest through at least 2027[5] to speed the development and improve the quality of complex late-successional forests. These sales are expected to produce significant timber volume—75.134 million board feet for those ten sales already purchased, and 34.3 million board feet for those remaining sales not yet purchased. Declaration of Sarah Bickford ¶¶ 7, 10. This represents a significant percentage of the annual timber targets for BLM's Siuslaw and Marys Peak Field Offices. *See id.* ¶¶ 10-11.

---

[5] Implementation of the timber sales will likely continue for several years past 2027, as BLM timber sale contracts are typically for 36 months.

This Court's fee ruling in *Oregon Natural Desert Association v. McDaniel*, No. 06-cv-242-AA, 2011 WL 4625715 (D. Or. Sept. 30, 2011), is instructive. There, an environmental plaintiff prevailed on a single claim against BLM "and obtained modest relief when compared with the relief sought in its complaint"; this Court did not order vacatur or injunctive relief. *Id*. at *3. Given the plaintiff's limited success, this Court rejected its request for an award of more than $127,000 and awarded only $70,762.50. *Id*. at *4. Here, akin to *McDaniel*, Defendants prevailed against most of Plaintiff's claims and Plaintiff obtained no vacatur or injunction order. At most, a limited fee award is appropriate given Plaintiff's limited success.

This Court's EAJA ruling in *Cascadia Wildlands v. BLM*, 987 F. Supp. 2d 1085 (D. Or. 2013) 1094-95, is also instructive. There, plaintiffs succeeded in enjoining a BLM timber project until BLM considered another agency's listed species finding and whether it needed to supplement its existing NEPA analysis. *Id*. at 1089, 1095. But this Court reduced fees by 15 percent because plaintiffs prevailed on only one of three claims and obtained "modest relief." *Id*. at 1094, 1095. Here, as in *Cascadia Wildlands*, Plaintiffs prevailed on only a fraction of its NEPA claims. But unlike in that case, Plaintiff here failed to obtain any injunction, and failed to obtain almost all the other relief sought in its operative complaint. Plaintiff instead agreed to

implementation of sixteen BLM timber sales that will substantially implement the N126 program.  A more significant fees reduction than *Cascadia Wildlands* is appropriate.

The fees ruling in *Alliance for the Wild Rockies v. Savage*, No. CV 15-54-M-DLC, 2019 WL 3293425 (D. Mont. July 22, 2019) is also instructive. There, an environmental plaintiff sought to vacate an entire Forest Service project but instead achieved only a "pause on road activities" that affected just 20 percent of the project's land area.  *Id*. at *9.  Nor did that case significantly advance environmental law or blaze new trails.  *Id*.  The district court cut requested fees by 20 percent to account for this limited success.  *Id*. Here, an even greater fees reduction is warranted,[6] because Plaintiff achieved no delay or pause in N126's implementation and instead BLM will continue to sell and implement N126 timber sales for years.

For these reasons, this Court should award no more than 50 percent of the requested fees, after accounting for the lodestar reductions described below in Argument section III.

---

[6] *See also Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (upholding district court's decision to reduce fee request by 30% due to limited success); *S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. C–09–5676 EMC, 2011 WL 6012936, at *13 (N.D. Cal. Dec. 1, 2011) (reducing plaintiff's requested fee by 50% due to limited success).

Page 12    Response to Motion for Attorneys' Fees; *Cascadia Wildlands v. Adcock, et al.*, Case No. 6:22-cv-00767-AA

### III. This Court should reduce the lodestar fees amount to account for excessive high-rate billing and non-compensable time.

Courts apply the "lodestar" method to determine reasonable attorney fees. *See Hensley*, 461 U.S. at 433. To calculate the lodestar amount, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id*.

Here, as Defendants explain below, Plaintiff unnecessarily staffed this case up with higher-priced attorneys and seeks an award for various non-compensable tasks.

### A. Plaintiff fails to establish that four lawyers billing enhanced rates were necessary in this case and that no attorneys were available at the statutory maximum rate.

Plaintiff excessively staffed and billed this case with a five-lawyer team. Plaintiff seeks enhanced rates—beyond EAJA's statutory maximum—for four lawyers and the EAJA statutory maximum rate for a fifth lawyer (Karli Uwaine). *See* Mot. 5, 9-10. Plaintiff's attempt to bill for 693.4 hours among five lawyers is excessive. *See* Mot. 5.

A court may award a higher attorney rate than EAJA's statutory maximum only if (1) the attorney possesses distinctive knowledge and skills developed through a practice specialty, (2) those skills are needed in the litigation, and (3) an attorney is not available elsewhere at the statutory

maximum rate. *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). It is the plaintiff's burden to satisfy these elements. *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158–62 (9th Cir. 2008).

Here, Plaintiff fails to establish the second and third *Love* elements. Plaintiff fails to meet the "stringent requirements" to "overcome the strong presumption" that a basic fee is reasonable. *Steward v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993).

Regarding the second *Love* element, Plaintiff failed to meet its burden to show it was necessary to bill so many lawyers at high rates in a relatively routine NEPA case over a timber project—while billing no time for lower-cost legal assistants or paralegals. Notably, this case required no courtroom appearances or oral arguments and Defendants appeared with a single attorney. Plaintiff also fails to show it was necessary to bill for four outside lawyers for a single-plaintiff case, when it had an in-house experienced NEPA litigator—Nicholas S. Cady—who appeared in the case from the outset. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (cleaned up).

The ruling in *Forestkeeper v. U.S. Forest Service*, No. CV F 09–392 LJO JLT, 2011 WL 2946176 (E.D. Cal. July 21, 2011) is instructive. There, a

plaintiff sought fees for seven attorneys, including environmental specialists, but the court found that plaintiff had failed to establish why this large team was needed. *Id.* at *6. The same can be said here. In prior environmental litigation involving NEPA claims, by contrast, this Court found an environmental plaintiff was judicious and efficient when "one attorney and one legal fellow worked on the summary judgment briefing." *Or. Nat. Desert Ass'n v. BLM*, 223 F. Supp. 3d 1147, 1154 (D. Or. 2016). Plaintiff's approach here goes well beyond judicious, efficient, and necessary attorney staffing.

Instructive also, this Court rejected an EAJA request by multiple lawyers for payment at enhanced rates in a "protracted" environmental-law case. *All. for the Wild Rockies, Inc. v. Allen*, No. 04-1813-JO, 2010 WL 1008224 at *2 (D. Or. March 15, 2010). This Court concluded that "the nature of many of the listed tasks belies the need for environmental expertise or the enhanced rates that accompanies the expertise." The court reduced the claimed hours by 50 percent and cut the hourly rate significantly. *Id.* A similar result is appropriate here.

Regarding the third *Love* element, Plaintiff here failed to prove it could not find any attorneys to work on this case at the EAJA maximum statutory rate. *See Love*, 924 F.2d at 1496. A member of Plaintiff's staff merely declares that she is "unaware" of qualified attorneys in the Eugene area who

can litigate at EAJA's statutory rate.  ECF 59, Bethany Cotton Decl. ¶ 2.  But

Plaintiff fails to explain what, if any, efforts were made to find more cost-

effective counsel.  Plaintiff supplies no evidence that it undertook any type of

search for qualified attorneys who could represent it at the EAJA statutory

maximum rate.  The burden of proving that appropriate counsel cannot be

found at the statutory rate rests on the plaintiff. *United States v. 22249*

*Dolorosa St.*, 190 F.3d 977, 985 (9th Cir. 1999).  Plaintiff failed to meet its

burden here.

### B.    This Court should reduce the lodestar fees amount to account for billing on non-compensable work.

Plaintiff also fails to meet its burden to establish that its attorney

hours billed were reasonably necessary; many hours of work are non-

compensable.  *See Hensley*, 461 U.S. at 434.  The problems below warrant

reductions to the lodestar fees amount.

### 1.    This Court should not award any fees for work in agency administrative proceedings.

Plaintiff requests non-compensable fees for attorney work related to

agency administrative proceedings well before this action commenced.

Illustratively, Nicholas S. Cady claims $15,048 for 2020 work and $12,771 for

2021 work.  ECF 61 pp. 8-10.  All of this occurred six months or more before

the complaint was filed in May 2022 and largely addressed administrative

Page 16    Response to Motion for Attorneys' Fees; *Cascadia Wildlands v.*
           *Adcock, et al.*, Case No. 6:22-cv-00767-AA

protest and other proceedings at BLM and the Interior Board of Land

Appeals ("IBLA"). This time is not compensable. EAJA only allows recovery

of fees "incurred . . . in any civil action." 28 U.S.C. § 2412(d)(1)(A). A "civil

action" is "a proceeding in a judicial court, not an administrative court." *W.*

*Watersheds Proj. v. U.S. Dep't of the Interior*, 677 F.3d 922, 926 (9th Cir.

2012) (citation omitted). The only time that fees and costs can be awarded for

participation in administrative proceedings is "when the proceedings have

been ordered in a district court action that remains pending until the

conclusion of the administrative proceedings." *Id.* at 923. *Accord Or. Nat.*

*Desert Ass'n v. McDaniel*, No. 06-cv-242-AA, 2011 WL 4625715, at *3 (D. Or.

Sept. 30, 2011) (declining to award fees incurred during administrative

proceedings).

   Plaintiff also bills at least $654.78 in attorney time for researching

whether administrative time is compensable under EAJA. *See* ECF 62 at 15.

Such research time is not compensable; in the first place, EAJA does not

allow compensation for administrative time.

### 2. This Court should not award any fees for work on a preliminary injunction motion that was never filed.

   Plaintiff attempts to bill at least $8,700 in attorney time in 2024

regarding a preliminary injunction motion that was never filed. *See* ECF 63

at 7-8 ($5,500 in claimed billing by Peter Jensen); ECF 61 at 12 ($3,200 in

claimed billing by Nicholas S. Cady). This billing is inappropriate and unnecessary. Indeed, Plaintiff represented to this Court its agreement that "any timber harvest associated with the challenged decisions will continue for the duration of this case." ECF 20 at 5.

### 3. This Court should not award fees for John Mellgren's unsupported work.

Plaintiff is seeking $27,507.50 for attorney John Mellgren's work. Mot. 10. This Court should reject this billing. Mr. Mellgren withdrew from this case in July 2022, ECF 7, before Defendants answered the original complaint or filed the administrative record.

Mr. Mellgren has declined to provide a declaration explaining his billing and his prior experience/expertise. Instead, another lawyer—Mr. Sangye Ince-Johannsen, who did not appear in this case until months after Mr. Mellgren withdrew—attempts to justify Mr. Mellgren's billing entries and claimed rates. *See* ECF 60 ¶¶ 16-17. Mr. Ince-Johannsen states that Mr. Mellgren "cannot" execute a declaration regarding his prior work, *id*. ¶ 16, but fails to explain how a Mellgren declaration regarding his prior work would conflict with his current duties and/or present an appearance of impropriety. Mr. Mellgren is not supporting any payment on his behalf, and Plaintiff's evidence regarding Mr. Mellgren's work and prior experience is hearsay that does not support any award.

Page 18     Response to Motion for Attorneys' Fees; *Cascadia Wildlands v. Adcock, et al.*, Case No. 6:22-cv-00767-AA

**4. This Court should not award fees for reviewing time sheets and fee declarations, and enhanced rates are inappropriate for fee-motion work.**

Plaintiff 's counsel seeks at least $3,256—at rates above EAJA's statutory maximum—for reviewing and editing time records and declarations. *See* ECF 60 at 17-18. This billing is not compensable and should be removed from any award.

This Court's ruling is instructive in *Institute for Wildlife Protection v. U.S. Fish & Wildlife Service*, No. 07–CV–358–PK, 2008 WL 4866063 (D. Or. Nov. 5, 2008). There, this Court declined to award fees for "reviewing time records" because that is an expense reflected in an attorney's hourly billing rate. *Id.* at *3. "It is unlikely that Plaintiff's counsel would bill his client for checking his own time records, and, therefore, the opposing party should not be charged for these costs." *Id. Accord McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1096 (D. Or. 2016) (emphasizing that "[c]lerical tasks are typically considered overhead expenses . . . [and] not reimbursable"). Similarly, this Court disfavors billing for reviewing and editing declarations; "the contents of declarations should solely be the work of the declarant." *Aubudon Soc'y of Portland v. U.S. Nat. Res. Conservation Serv.*, No. 10-cv-1205-HZ, 2012 WL 4829189, *9 (D. Or. Oct. 8, 2012).

Plaintiff also seeks enhanced rates for time spent on its fee motion, *see* ECF 60 at 18, but fee-motion work is routine and not a legal specialization entitling counsel to enhanced rates.  In *Sorenson v. Concannon*, this Court recognized that EAJA proceedings themselves "demand no special expertise or skills. All that is at stake is an award of attorney fees." 161 F. Supp. 2d 1164, 1172 (D. Or. 2001).  EAJA's statutory maximum—not a market rate— applies to time spent litigating fees. *Lucas v. White*, 63 F. Supp. 2d 1046, 1062-63 (N.D. Cal. 1999) ("Preparation of an application for attorney fees does not require specialized or distinctive knowledge within the meaning of the EAJA."); *Native Ecosystems Council v. Weldon*, 921 F. Supp. 2d 1069, 1081 (D. Mont. 2013) (awarding EAJA statutory rate for time preparing fee petition).

Plaintiff, finally, relies on outside "fee counsel" declarations.  ECF 64-65.  But these declarations are neither necessary nor helpful, given this Court's familiarity with prevailing rates in the community, and Plaintiff's litigating counsel's own representations regarding their prior fee awards. "That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are.  That is especially true when the opinion [sic] are expressed by attorneys whose own

professional interests might motivate them to favor higher rates." *Sam K. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015).

For these reasons, this Court should reduce the lodestar billing fee amount.

## CONCLUSION

This Court should deny Plaintiff's motion, or alternatively reduce any award as explained above.

Dated this 2nd day of December 2025.

<div style="margin-left: 40%;">

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant United States Attorney
    Attorneys for Defendants

</div>

## CERTIFICATE OF COMPLIANCE

The preceding memorandum complies with the applicable word-count limit under LR 54-3(e) because Defendants obtained prior court approval for 5,000 words, ECF 72, and the memorandum comprises less than 5,000 words. This word count, calculated by the word processing system used to prepare the memorandum, includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, signature block, and any certificates of counsel.

Dated this 2nd day of December 2025.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Sean E. Martin*
SEAN E. MARTIN
Assistant U.S. Attorney