Sangye Ince-Johannsen, OSB # 193827
WESTERN ENVIRONMENTAL LAW CENTER
120 Shelton McMurphey Boulevard, Suite 340
Eugene, Oregon, 97401
sangyeij@westernlaw.org
541-778-6626

Nicholas S. Cady, OSB # 113463
CASCADIA WILDLANDS
P.O. Box 10455
Eugene, Oregon, 97440
nick@cascwild.org
541-434-1463

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **CASCADIA WILDLANDS**, | Case No. 6:22-cv-00767-AA |
| *Plaintiff*, | |
| v. | **PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND OTHER EXPENSES** |
| **CHERYL ADCOCK**; **PAUL TIGAN**; and **U.S. BUREAU OF LAND MANAGEMENT**, | |
| *Defendants*, | |
| and | |
| **AMERICAN FOREST RESOURCE COUNCIL**, | |
| *Defendant-Intervenor*. | |

Table of Contents.

A. BLM's Position Was Not Substantially Justified ................................................. 1

   1. BLM's Success in Defending Some NEPA Claims Does Not Mean Its Position Was Substantially Justified. ................................................... 1

   2. BLM's Position on Sedimentation from Road Construction Was Not Substantially Justified ................................................................................. 1

   3. BLM's Failure to Consider the Significance of the N126 Project's Impacts to Marbled Murrelets Was Not Substantially Justified. .......... 4

   4. BLM's Failure to Consider the Cumulative Effects of the Deadwood Creek Project was Not Substantially Justified. ..................................... 4

B. Cascadia Achieved Excellent Results Warranting a Full Fee Award ............. 6

C. Cascadia's Requested Hours and Market Rates are Reasonable. ..................... 9

   1. Cascadia Is Entitled to Enhanced Market Rates. ................................... 9

      a. Specialized Skills Were Necessary to Litigate This Complex NEPA Case. .......................................................................... 9

      b. Qualified Counsel Was Unavailable at the Statutory Rate. ....... 10

      c. Cascadia's Staffing Was Efficient and Reasonable. .................. 11

   2. Cascadia's Hours Were Reasonably Expended and Are Compensable. 12

      a. Pre-Complaint Investigation Is Compensable. ........................... 12

      b. Work on the Preliminary Injunction Was Necessary and Directly Informed the Remedy ................................................................ 13

      c. Fees for Former Counsel John Mellgren Are Proper. ............... 15

      d. "Fees-on-Fees" Are Compensable. ............................................. 15

Conclusion .................................................................................................................. 16

Certificate of Compliance .......................................................................................... 17

Table of Authorities.

<u>Cases:</u>

*All. for the Wild Rockies v. Savage,*
  2019 WL 3293425 (D. Mont. July 22, 2019) ...................................................... 8

*Barrios v. Cal. Interscholastic Fed'n,*
  277 F.3d 1128 (9th Cir. 2002)........................................................................... 6

*Blue Mountains Biodiversity Project v. Blackwood,*
  161 F.3d 1208 (9th Cir. 1998).......................................................................... 5

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
  532 U.S. 598 (2001)........................................................................................... 7

*Cascadia Wildlands v. BLM,*
  987 F. Supp. 2d 1085 (D. Or. 2013)........................................................ 7, 8, 14

*Cascadia Wildlands v. Bureau of Indian Affs.,*
  801 F.3d 1105 (9th Cir. 2015)........................................................................... 4

*Forestkeeper v. U.S. Forest Serv.,*
  2011 WL 2946176 (E.D. Cal. July 21, 2011).................................................... 11

*Gonzales v. Free Speech Coal.,*
  408 F.3d 613 (9th Cir. 2005)............................................................................ 2

*Greenpeace, Inc. v. Stewart,*
  2020 WL 2465321 (9th Cir. May 12, 2020)............................................... 15, 16

*Gutierrez v. Barnhart,*
  274 F.3d 1255 (9th Cir. 2001)........................................................................... 1

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)......................................................................... 6, 8, 9, 16

*Ibrahim v. U.S. Dep't of Homeland Sec.,*
  912 F.3d 1147 (9th Cir. 2019) (en banc) ......................................................... 5

*Kern v. BLM,*
  284 F.3d 1062 (9th Cir. 2002)........................................................................... 5

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*,
  305 F. Supp. 3d 1156 (D. Or. 2018)............................................................. 10, 13

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*,
  2014 WL 3546858 (D. Or. July 15, 2014).................................................. *passim*

*Love v. Reilly*,
  924 F.2d 1492 (9th Cir. 1991)............................................................................... 9

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008)................................................................... 8, 9, 12

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009)............................................................................. 11

*Ocean Advocs. v. U.S. Army Corps of Eng'rs*,
  402 F.3d 846 (9th Cir. 2005)............................................................................... 4

*Or. Nat. Desert Ass'n v. McDaniel*,
  2011 WL 4625715 (D. Or. Sept. 30, 2011) ........................................................ 8

*Or. Nat. Res. Council Fund v. Brong*,
  492 F.3d 1120 (9th Cir. 2007)............................................................................. 3

*Or. Nat. Res. Council Fund v. Goodman*,
  2008 WL 4000442 (D. Or. Aug. 25, 2008) .................................................... 3, 13

*Or. Nat. Res. Council v. Madigan*,
  980 F.2d 1330 (9th Cir. 1992)............................................................................. 3

*Pierce v. Underwood*,
  487 U.S. 552 (1988) .................................................................................... 1, 10

*Richardson v. Rest. Mktg. Assocs., Inc.*,
  527 F. Supp. 690 (N.D. Cal. 1981)......................................................... 6, 14, 15

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Col.*,
  605 U.S. 168 (2025)......................................................................... 2, 3, 4, 5, 6

*Shawna Marie H. v. Comm'r of Soc. Sec. Admin.*,
  2022 WL 18024955 (D. Or. Dec. 30, 2022)....................................................... 2

*Thangaraja v. Gonzales*,
  428 F.3d 870 (9th Cir. 2005)......................................................................... 3, 5

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990)................................................................................. 12

*W. Watersheds Project v. U.S. Dep't of the Interior*,
    677 F.3d 922 (9th Cir. 2012)........................................................................... 12, 13

*West v. West*,
    13 Vet. App. 25 (1999) ...................................................................................... 6

*Wyatt B. v. Kotek*,
    2024 WL 4867082 (D. Or. Nov. 22, 2024) .......................................................... 12


Statutes:

28 U.S.C. § 2412(d) ...................................................................................................... 1


Regulations:

40 C.F.R. § 1508.7 (1978) ............................................................................................ 5


Federal Register:

*Removal of National Environmental Policy Act Implementing Regulations*,
    90 Fed. Reg. 10610 (Feb. 225, 2025) ............................................................. 5, 6

Miscellaneous:

Or. Code of Judicial Conduct R. 2.2.......................................................................... 15

Pursuant to the Court's Order of July 8, 2025 (ECF No. 70), Civil Local Rule 54-3, and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), Plaintiff Cascadia Wildlands ("Cascadia") hereby respectfully files this reply to Defendants Cheryl Adcock et al. ("BLM's") response to its motion for attorneys' fees, costs, and other expenses. ECF No. 73.

A.    BLM's Position Was Not Substantially Justified.

BLM bears the burden of proving its position was substantially justified in the underlying action and, independently, in the litigation defending its validity. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001). The inquiry is whether BLM's position was reasonable at the time it was taken. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). BLM fails to prove that either the underlying action or its position in litigation was substantially justified under the law and facts as they existed at the time.

1.    BLM's Success in Defending Some NEPA Claims Does Not Mean Its Position Was Substantially Justified.

First, BLM asserts that because it successfully defended "most" of Cascadia's National Environmental Policy Act ("NEPA") claims, its position was substantially justified. Ds' Opp. at 5. This is misplaced. The fact that a plaintiff succeeded on fewer than all the claims brought does not mean the defendants' position was substantially justified. *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv. ("LOWD I")*, No. 3:10-cv-01397-SI, 2014 WL 3546858, at *3 (D. Or. July 15, 2014) (awarding fees where plaintiff prevailed on one of five claims). BLM cannot aggregate unrelated wins on other NEPA counts to mask the fact it lost on other counts that necessitated the remand.

2.    BLM's Position on Sedimentation from Road Construction Was Not Substantially Justified.

Second, even though BLM lost on this claim, it asserts it was substantially

justified in failing to consider the impacts on aquatic resources of sedimentation from roads because this Court recognized it "'undertook thorough, detailed calculations' to estimate how much sediment would enter streams." Ds' Opp. at 5 (citing ECF No. 50 at 28). However, BLM excludes the relevant portion of that statement, in which this Court found that "while BLM undertook" these calculations, "it failed to explain how that sediment would actually affect the streams or the species in the streams, like the coho salmon." ECF No. 50 at 28. This failure occurred because, as this Court noted, BLM improperly tiered to a programmatic sediment analysis that was based on a contradictory premise of "few miles of new roads." *Id*. at 28–29.

BLM relies on the Supreme Court's recent decision in *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Col.,* to excuse this failure, arguing that "whether a particular report is detailed enough . . . requires the exercise of agency discretion." 605 U.S. 168, 181 (2025). BLM's reliance is misplaced. First, the Ninth Circuit has cautioned against "putting undue weight on [a subsequent] Supreme Court's holding," stating that reliance on later decisions constitutes impermissible "hindsight, rather than an assessment of the reasonableness of the government's position at the time of litigation." *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 620 (9th Cir. 2005); *see also Shawna Marie H. v. Comm'r of Soc. Sec. Admin.*, No. 6:21-cv-00001-JR, 2022 WL 18024955, at *2 (D. Or. Dec. 30, 2022) (applying *Gonzales*).

Second, while *Seven County* limited the scope of analysis for *separate* projects over which an agency lacks authority, the Supreme Court affirmed the duty to analyze direct and indirect impacts of the project itself. *Seven County*, 605 U.S. at 189. As the Supreme Court noted, if a "new rail line could disrupt the habitat of protected species, or the new rail embankments could cause soil erosion into local bodies of water, . . . NEPA dictated that the Board evaluate those effects." *Id*. Here, the flaw this Court identified was BLM's failure to explain how sediment (soil

erosion) from the project's own roads would affect streams. ECF No. 50 at 28. This is exactly the type of direct-effect analysis *Seven County* confirms is mandatory. BLM cannot use the "broad zone of reasonableness" regarding *scoping* decisions to excuse a factual failure to support its conclusions on *direct effects* under the "hard look" standard the Ninth Circuit required at the time. *Or. Nat. Res. Council Fund v. Brong*, 492 F.3d 1120, 1130 (9th Cir. 2007) (stating standard).

Moreover, nothing in the record supports BLM's position. ECF No. 50 at 28 (citing to N126 AR 27) (the answer of "whether ['50 to 90 miles' of newly constructed roads and '300 to 420 miles' of renovated roads] qualifies as 'few' to justify the application of the 'negligible' determination in the 2016 RMP . . . is an important distinction" in which "the answer is not in the record."). "A court's finding that an agency decision was unsupported by substantial evidence is 'a strong indication' that the position of the United States in the litigation was not substantially justified." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005).

Finally, BLM argues that Cascadia "failed to articulate" why the sedimentation analysis was insufficient. Ds' Opp. at 5. BLM ignores the record. The Court ruled on this issue in Cascadia's favor. ECF No. 50 at 28. BLM did not appeal that ruling. It cannot use a fee petition to collaterally attack the final judgment or re-litigate waiver arguments it lost (or failed to raise) at the summary judgment phase. *Or. Nat. Res. Council Fund v. Goodman*, No. CIV. 05-3004-PA, 2008 WL 4000442, at *2 (D. Or. Aug. 25, 2008) ("The government's argument, though made in an opposition to a fee petition, amounts to a prohibited collateral attack on the underlying judgment."); *see also LOWD I*, 2014 WL 3546858, at *3 ("[A]rguments rejected by the Court in its original determination . . . do not suffice to show that the government's position was substantially justified.") (citing *Or. Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992)).

3.    BLM's Failure to Consider the Significance of the N126 Project's
       Impacts to Marbled Murrelets Was Not Substantially Justified.

Third, BLM's position on its finding of no significant impact ("FONSI")
regarding the N126 Project's effects on marbled murrelet habitat due to road
construction was not substantially justified because BLM failed to "explain *why* the
impact of new road construction would not be [a] 'significant' impact." ECF No. 50
at 43 (emphasis added). As this Court explained, "[i]f an agency decides not to
prepare an EIS, it must supply a 'convincing statement of reasons' to explain why a
project's impacts are insignificant." ECF No. 50 at 9–10 (citing *Cascadia Wildlands
v. Bureau of Indian Affs.*, 801 F.3d 1105, 1111 (9th Cir. 2015)). BLM did not do so.
"Instead, BLM rationalized the impact by stating that the project would restore
nesting habitat for the species and restore complex late-successional forest that is
key to the species." ECF No. 50 at 43 (citing N126 AR 49, 56, 57–58).

BLM again relies on *Seven County* to argue that its finding fell within a
"broad zone of reasonableness." Ds' Opp. at 6. But *Seven County* does not
retroactively lower the bar for the "convincing statement of reasons" required by
Ninth Circuit precedent at the time BLM acted. *Ocean Advocs. v. U.S. Army Corps
of Eng'rs*, 402 F.3d 846, 864 (9th Cir. 2005). This Court found BLM's explanation
lacking because it relied on broad statements about restoration rather than
analyzing the specific impacts of road construction. *See* ECF No. 50 at 43. That
failure is not substantially justified.

4.    BLM's Failure to Consider the Cumulative Effects of the Deadwood
       Creek Project was Not Substantially Justified.

Finally, BLM argues that under *Seven County*, it had no duty to consider the
cumulative effects of the Deadwood Creek project because it lacked regulatory
authority over that project, which was implemented by the Forest Service. Ds' Opp.
at 7. This argument fails for two reasons.

First, BLM waived this argument. It must demonstrate justification for the position it actually took, not one it wishes it had taken. *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (en banc) (courts must evaluate the government's actual conduct). At the time of summary judgment, BLM argued it *did* consider the cumulative effects, not that it lacked authority to do so. ECF No. 45 at 37. The Court rejected that argument, finding the analysis "cursory" and insufficient. ECF No. 50 at 39. Just as an agency is barred from using *post hoc* rationalizations to support its action, it is likewise barred from using *post hoc* legal theories derived from subsequent case law to prove its prior litigation conduct was substantially justified. *Thangaraja*, 428 F.3d at 875 n.1 (subsequent litigation position cannot "cure" an underlying agency action that was not substantially justified). Because BLM failed to raise the "limited authority" defense when it mattered, it cannot rely on it now to establish substantial justification.

Indeed, the NEPA regulations binding on BLM at the time required a cumulative effects analysis. As this Court noted, the 1978 NEPA regulations governed this case. ECF No. 50 at 2 n.1. Those regulations define "cumulative impact" as the impact of the action when added to other reasonably foreseeable future actions "regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7 (1978). Ninth Circuit precedent interpreting these regulations confirms BLM was required to analyze foreseeable timber sales on adjacent federal land. *Kern v. BLM*, 284 F.3d 1062, 1078 (9th Cir. 2002); *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1215 (9th Cir. 1998). Thus, when BLM issued the N126 EA, it was required to analyze the Forest Service's Deadwood Creek project, regardless of its regulatory authority over that project. BLM was not substantially justified in ignoring this requirement.[1]

---

[1]  Even if *Seven County* or the Council on Environmental Quality's ("CEQ's") 2025 rescission of the NEPA regulations altered this obligation, *see Removal of National*

B.    <u>Cascadia Achieved Excellent Results Warranting a Full Fee Award.</u>

BLM requests a punitive 50% reduction in fees, arguing Cascadia achieved "limited success" because it did not obtain vacatur or an injunction and ultimately stipulated to a remedy allowing some logging. Ds' Opp. at 9–12. This argument mischaracterizes the relief Cascadia obtained, ignores the programmatic nature of the N126 Landscape Plan, and relies on case law that actually supports a full or nearly full award.

As a threshold matter, the parties' Stipulated Remedy states that "nothing in [it] shall prejudice" Plaintiff's right to recover attorneys' fees. ECF No. 51 ¶ 6. BLM disregards this provision. By citing the negotiated remedy as evidence of "limited success," BLM attempts to weaponize the concessions Cascadia made to settle the relief phase of this case. This turns the stipulation's "no prejudice" clause on its head. Instead of penalizing settlement, the Court must look to the "results obtained" to determine Cascadia's success. *Hensley v. Eckerhart*, 461 U.S. 424, 434–36 (1983).[2]

Substantively, Cascadia achieved its primary goal: protecting specific ecological resources at risk. As Cascadia's Legal Director Nicholas Cady declares, the stipulated remedy successfully prevented logging in the "high priority" mature

_____

*Environmental Policy Act Implementing Regulations*, 90 Fed. Reg. 10610 (Feb. 25, 2025), a retrospective defense based on intervening law does not excuse the failure to comply with the clear regulatory mandate in effect at the time. *See West v. West*, 13 Vet. App. 25, 28–29 (1999).

[2]   Penalizing a plaintiff for agreeing to a stipulated remedy—rather than forcing the Court to litigate a possibly harsher injunction—disincentivizes efficient resolution of litigation. *See Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) (a plaintiff who enters into a legally enforceable settlement agreement is a "prevailing party" entitled to fees, as this encourages amicable resolution of disputes); *Richardson v. Rest. Mktg. Assocs., Inc.*, 527 F. Supp. 690, 700 n.5 (N.D. Cal. 1981) ("In light of the strong public policy favoring settlement," defendants' argument "that time spent on settlement negotiations" should not be compensable is "without merit.").

and old-growth areas that were the primary driver of Cascadia's challenge. *See* Second Cady Decl. ¶ 9. Indeed, the scale of this victory is measurable: the settlement permits "less than 25% of the commercial logging authorized in the N126 decision." *Id*. By eliminating more than 75% of the project's authorized footprint—and 100% of the controversial old-growth stands—Cascadia achieved a resounding success. *Id*.

While BLM argues Cascadia achieved "limited success" because some logging occurred, this ignores the qualitative victory. Cascadia achieved a material alteration of the legal relationship between the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). BLM argues Cascadia's success was limited because it did not vacate certain timber sales, like "Pucker Up." Ds' Opp. at 9.[3] This views the litigation through a keyhole. Cascadia challenged the "N126 Late Successional Reserve Landscape Plan"—a programmatic analysis intended to authorize logging across a broad landscape for years to come. ECF No. 29 at 11–12. Because of this Court's Order on Summary Judgment (ECF No. 50) and the subsequent stipulation (ECF No. 51), BLM is now barred from authorizing any timber sales under this EA beyond the list Cascadia considered and agreed to in the stipulation. The practical outcome is not defined by the sales that proceeded, but by the programmatic authority that was extinguished. Cascadia successfully converted an open-ended landscape plan into a closed, finite list.

The cases BLM cites do not support a 50% reduction; in fact, they suggest any reduction would be error. In *Cascadia Wildlands v. BLM*, the Court reduced fees by only 15% even though the plaintiff prevailed on only one of three claims. 987

---

[3]  As Mr. Cady notes, the sales that proceeded involved younger stands or less controversial logging units that did not implicate the primary old-growth concerns of the litigation. Second Cady Decl. ¶ 9.

F. Supp. 2d 1085, 1095 (D. Or. 2013). Notably, the Court in *Cascadia* rejected the same argument BLM makes here, finding it may consider "fruitful settlement negotiations" where plaintiffs obtained significant relief, even if the summary judgment order was narrower. *Id.* at 1095.

     By contrast, in *Or. Nat. Desert Ass'n v. McDaniel*, the plaintiff prevailed on a single claim, and the court found the relief it obtained "modest" because the court declined to vacate the deficient plan or enjoin the agency from relying on it. No. CIV 06-242-AA, 2011 WL 4625715, at *3 (D. Or. Sept. 30, 2011). Consequently, the status quo remained legally intact. Here, the N126 project has been fundamentally constrained; BLM must now correct its sediment and cumulative effects analyses before proceeding with any work outside the stipulation. Further, in *All. for the Wild Rockies v. Savage*, the plaintiff achieved only a "pause on road activities," affecting just 20% of the project area. No. CV 15-54-M-DLC, 2019 WL 3293425, at *9 (D. Mont. July 22, 2019). Despite this truly limited result, the court reduced fees by only 20%—not the 50% BLM seeks here.

Moreover, *Hensley* rejects mathematically reducing fees where claims are based on a common core of facts or related legal theories. 461 U.S. at 435. Here, Cascadia's claims (sediment, cumulative effects, murrelets) are interrelated challenges to the sufficiency of the same N126 EA. Having identified significant NEPA violations that forced a remand and limited the project's scope, Cascadia's counsel should not be penalized for not winning every count. The result here—a binding restriction on landscape-level logging of federal public lands—warrants a full fee award.

Finally, even if the Court were to find Cascadia achieved only partial success, BLM's proposed 50% reduction is punitive and arbitrary. The Ninth Circuit has held that where a district court determines a reduction is warranted to trim the award, it may impose a "small reduction, no greater than 10 percent—a 'haircut'—

based on its exercise of discretion." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Given the significant ecological relief obtained—permanent protection of all high-priority old-growth forest units—any reduction beyond a modest haircut would fail to account for the "excellent results" Cascadia achieved where it mattered most. *See Hensley*, 461 U.S. at 435.

C.    Cascadia's Requested Hours and Market Rates are Reasonable.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id*. at 433. BLM challenges both the rates and hours requested by Cascadia, arguing that the case was overstaffed and that market rates are unjustified. These arguments ignore the complexity of the litigation and the specific findings of this Court in prior environmental cases.

1.    Cascadia Is Entitled to Enhanced Market Rates.

BLM challenges Cascadia's request for market rates, arguing Cascadia failed to prove specialized skills were "needed," or that statutory-rate counsel was "unavailable" under *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991). Ds' Opp. at 14. Both arguments fail.

a.    Specialized Skills Were Necessary to Litigate This Complex NEPA Case.

BLM characterizes this as a "relatively routine NEPA case" that required no specialized skill. Ds' Opp. at 14. This is belied by the record. This case involved a 53,000-page administrative record and complex challenges to sediment modeling and cumulative effects tiering. *See* ECF No. 50. Successfully litigating these issues required distinctive knowledge of environmental laws and Ninth Circuit procedural law. *See Love*, 924 F.2d at 1496 (environmental litigation is an identifiable practice specialty).

This District has repeatedly recognized that environmental litigation requires specialized skills justifying enhanced rates. *See LOWD I*, 2014 WL 3546858, at *13 (finding that NEPA and NFMA litigation involves a "particularly distinctive and rare area of expertise"); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner* ("*LOWD II*"), 305 F. Supp. 3d 1156, 1167 (D. Or. 2018) (finding specialized knowledge necessary where case involved "complicated federal environmental law issues"). Like those cases, this one required untangling complex agency scientific models and applying tiered NEPA regulations—tasks well beyond the ken of a general practitioner. Regardless of whether these specific issues were "novel," the controlling inquiry is whether the area of law requires specialized skill. *LOWD I*, 2014 WL 3546858 at *12 (citing *Pierce*, 487 U.S. at 573). As established in *Love* and *LOWD I*, environmental litigation is precisely such an area.

>    b.    <u>Qualified Counsel Was Unavailable at the Statutory Rate.</u>

BLM argues Cascadia failed to prove unavailability because Bethany Cotton declares she was "unaware" of other counsel. Ds' Opp. at 15–16 (citing ECF No. 59 at ¶ 2). BLM misstates the burden of proof. A plaintiff need not conduct a statistical survey of the bar; a declaration from an experienced practitioner attesting to the lack of available counsel is sufficient. *LOWD II*, 305 F. Supp. 3d at 1169 (accepting expert declarations that "no similarly-qualified attorneys were available"); *LOWD I*, 2014 WL 3546858, at *13 (finding plaintiff met burden where director's declaration stated inability to find counsel who would accept case at the statutory hourly rate and experts opined on the difficulty public interest groups face in finding qualified attorneys). As in *LOWD I* and *LOWD II*, Cascadia submitted proof that qualified counsel with the requisite NEPA expertise was unavailable at the statutory rate. Cotton Decl. ¶ 2. Mr. Cady attests to the "genuine and substantial difficulty" Cascadia faced in securing counsel, noting that the "scarcity of available council

necessitated the involvement of multiple attorneys." Second Cady Decl. ¶ 2.

The burden shifts to BLM to prove otherwise, but it fails to meet its burden; it files no evidence whatsoever that a single qualified attorney in the forum would undertake a complex NEPA case against the U.S. Department of Justice on a contingent fee basis at $251 per hour. *See Nadarajah v. Holder*, 569 F.3d 906, 915 (9th Cir. 2009) (awarding enhanced rates where government failed to rebut plaintiff's evidence of unavailability). Cascadia has met its burden under *Love*.

c.    Cascadia's Staffing Was Efficient and Reasonable.

BLM argues that Cascadia "excessively staffed" the case with five lawyers, comparing it to a decision from the Eastern District of California. Ds' Opp. at 13–14 (citing *Forestkeeper v. U.S. Forest Serv.*, No. CV F 09–392 LJO JLT, 2011 WL 2946176 (E.D. Cal. July 21, 2011)). *Forestkeeper* is inapposite. There, the court reduced fees because seven attorneys billed for duplicative conferences and 92 hours on a single motion to compel in a case with a "small" two-volume record. *Forestkeeper*, 2011 WL 2946176 at *6. Here, by contrast, Cascadia litigated a 53,000-page record with a streamlined and largely sequential team. And its attorneys did not duplicate efforts; rather, staffing shifted as the case progressed.

Mr. Mellgren handled early case strategy before withdrawing to begin his current role as an Administrative Law Judge for the Oregon Public Utility Commission. Ince-Johannsen Decl. ¶ 16. Mr. Ince-Johannsen assumed the lead counsel role on Mr. Mellgren's departure, while Mr. Cady provided subject-matter expertise and client coordination during the remedy phase. *See* Ince-Johannsen Decl. ¶¶ 13–15; Second Cady Decl. ¶ 2. Attorneys Jensen and Uwaine performed discrete research and drafting tasks at lower rates, demonstrating efficiency, not excess. *See LOWD I*, 2014 WL 3546858, at *10 (finding it "not excessive or duplicative for attorneys to work together on complex environmental litigation").

BLM's preference for a single-attorney model does not dictate reasonable staffing for a plaintiff bearing the burden of proof against a federal agency. *See Moreno*, 534 F.3d at 1114 (courts should not "set the fee based on speculation as to how other firms would have staffed the case").

Finally, BLM claims Cascadia's reliance on "outside 'fee counsel' declarations" are "neither necessary nor helpful" in determining whether a given rate is reasonable. Ds' Opp. at 20. This is incorrect. "In determining reasonable hourly rates, affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." *LOWD I*, 2014 WL 3546858, at *14 (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). As this Court recently held, the Oregon State Bar Economic Survey has "limitations," including failing to "account for important factors such as the skill, actual experience, or reputation of the attorneys involved." *Wyatt B. v. Kotek*, No. 6:19-cv-00556-AA, 2024 WL 4867082, at *4 (D. Or. Nov. 22, 2024). Accordingly, this Court "supplement[s] its review of the OSB Economic Survey data with the expert opinions supplied by Plaintiffs." *Id*. Just as in *Wyatt B.*, the declarations of Mr. Sherlock (ECF No. 64), and Mr. Kruse (ECF No. 65) provide the necessary proof to support counsel's specialized services.

2.    <u>Cascadia's Hours Were Reasonably Expended and Are Compensable.</u>

BLM seeks to deduct certain categories of time as non-compensable. Ds' Opp. at 16–20. These arguments misapply Ninth Circuit law and ignore the context of this case.

a.    <u>Pre-Complaint Investigation Is Compensable.</u>

BLM argues that Cascadia cannot recover fees for work performed before filing the Complaint. Ds' Opp at 16–17 (citing *W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 926 (9th Cir. 2012)). BLM conflates non-compensable

administrative adjudication with compensable pre-litigation investigation.

While *W. Watersheds Project* holds that time spent litigating before an administrative body (such as the IBLA) is generally not compensable, it does not bar recovery for time spent investigating legal claims, reviewing the decision record, and preparing the federal court complaint. *See LOWD II,* 305 F. Supp. 3d at 1171–72 (awarding fees for hours spent investigating potential claims and preparing for litigation); *Goodman*, 2008 WL 4000442, at *4 (pre-litigation time "spent reviewing the administrative record, researching the applicable law . . . and drafting the Complaint . . . rank among the most important [tasks] an attorney performs in any litigation."). This Court has held that tasks such as "conferences with the client to discuss the [agency] decision and potential appeal, reviewing the EIS and administrative record, researching potential claims . . . [and] drafting the complaint" are "relevant and compensable under the EAJA." *LOWD I*, 2014 WL 3546858, at *11.

Consistent with this case law, Cascadia has exercised billing judgment to omit time spent drafting the administrative protest and litigating the IBLA appeal. *See* Second Cady Decl. pp. 5–6 (showing omissions in red). The remaining time—spent vetting legal theories, conferring with the client, and drafting the Complaint—is standard pre-litigation work compensable under EAJA. *LOWD II*, 305 F. Supp. 3d at 1174 (awarding fees for pre-complaint investigation); *Goodman*, 2008 WL 4000442, at *4 (same).

      b.   <u>Work on the Preliminary Injunction Was Necessary and Directly Informed the Remedy.</u>

BLM objects to time spent in 2024 drafting a preliminary injunction motion Cascadia ultimately did not file, arguing that Cascadia had previously agreed that logging would continue. Ds' Opp. at 17–18 (citing ECF No. 20). This mischaracterizes the record and ignores the changed circumstances that

necessitated the work.

First, ECF No. 20 was a motion to stay proceedings to allow for an amended complaint; it merely acknowledged the factual status quo at that time. It was not a waiver of Cascadia's right to seek injunctive relief should BLM escalate logging in sensitive areas. *See* ECF No. 20 at 4. As the case continued, BLM increased logging, issuing new decisions targeting older, more controversial forests. *See* Second Cady Decl. ¶ 6. Cascadia reasonably prepared a preliminary injunction motion to prevent imminent irreparable harm to priority areas. Furthermore, BLM's "opaque and unhelpful" responses to requests for information regarding the timeline of logging required Cascadia to remain ready to file emergency motions to prevent irreparable harm. *Id*. ¶ 7.

Second, this Court has held that work on an unfiled preliminary injunction is compensable where it is reasonably related to the claims. In *Cascadia Wildlands v. BLM*, this Court rejected the argument that such time is non-compensable. 987 F. Supp. 2d at 1096. The Court held that "although never filed, the hours spent preparing a motion for a temporary restraining order and/or preliminary injunction are reasonably related to plaintiffs' NEPA claims and are thus compensable." *Id*. Just as in that case, Cascadia here faced an agency that "refused to agree to not award the project" pending a merits ruling, necessitating the preparatory work. *Id*. BLM offers no reason to depart from this precedent involving the same Plaintiff and the same circumstances.

Finally, this work was foundational to the ultimate relief obtained. The detailed factual analysis and field checking incorporated into the draft motion were critical to identifying the timber sales Cascadia sought and succeeded in having withdrawn to settle the case. *See* Second Cady Decl. ¶ 8. The data gathered for the preliminary injunction motion informed the Stipulated Remedy by identifying irreparable harm Cascadia later successfully avoided. *See Richardson*, 527 F. Supp.

at 700 n.5 (work furthering settlement is compensable).

      c.    <u>Fees for Former Counsel John Mellgren Are Proper.</u>

BLM objects to the time billed by Mr. Mellgren solely because he did not submit a declaration. Ds' Opp. at 18. This objection ignores ethical constraints. As noted above and in the Ince-Johannsen Declaration, Mr. Mellgren is now an Administrative Law Judge. Ince-Johannsen Decl. ¶ 16. Judicial ethics generally preclude sitting judges from submitting voluntary declarations in active litigation to avoid the appearance of impropriety or partiality. *See* Or. Code of Judicial Conduct R. 2.2 ("A judge shall not use the judicial position to gain personal advantage of any kind for the judge or any other person.").

Moreover, the fact that Mr. Mellgren may be ethically barred from preparing a declaration does not render his time non-compensable. Mr. Ince-Johannsen has reviewed Mr. Mellgren's contemporaneous time records, which are business records of the firm, *see* Ince-Johannsen Decl. ¶ 17(f), and has personal knowledge of the work performed during the early stages of this case. *Id.* ¶ 17 (attesting to accuracy based on "personal knowledge from working with Mr. Mellgren" and "review of firm records"). Denying fees for valid work performed by an attorney simply because he subsequently accepted a judicial appointment would be inequitable and contrary to the purpose of EAJA.

      d.    <u>"Fees-on-Fees" Are Compensable.</u>

BLM argues that time spent preparing the fee petition should be billed at the statutory rate because it is "routine" and does not require specialized skill. Ds' Opp. at 19–20. The Ninth Circuit Appellate Commissioner has considered and rejected a federal agency's argument that attorneys entitled to an EAJA fee award should have their market rates reduced to the statutory base rate for the fee proceeding. *Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, at **5–6 (9th Cir. May

12, 2020). Further, this Court has rejected the argument that it should assign different hourly rates to the same attorney depending on the individual task performed. *LOWD I*, 2014 WL 3546858, at *13 ("The Court rejects the argument that an enhanced hourly rate only applies to specific tasks requiring specialized skill."). Cascadia's attorneys are specialists entitled to market rates for their representation in this action; that entitlement extends to the time spent establishing their right to fees.

Finally, BLM characterizes the review of time records as non-compensable "clerical" work. Ds' Opp. at 19. This conflates data entry with the exercise of billing discretion mandated by the Supreme Court. Attorneys have an ethical obligation to review their time to exclude excessive or redundant hours. *Hensley*, 461 U.S. at 434. This is a professional task requiring legal judgment, not a clerical one.

Conclusion.

The Court should award Cascadia $266,409.80[4] in attorneys' fees and $500.44 in costs and expenses for a total of $266,910.24.

Date: December 23, 2025.                    Respectfully submitted,

                                            /s/ Sangye Ince-Johannsen
                                            Sangye Ince-Johannsen, OSB # 193827
                                            Nicholas S. Cady, OSB # 113463


                                            *Attorneys for Plaintiff*

---

[4]  Cascadia has updated its timesheets to reflect the reasonable time spent responding to BLM's opposition. *See* Second Cady Decl. and Uwaine and Ince-Johannsen Updated Timesheets (ECF Nos. 79 & 80) (new entries highlighted in yellow). This time should be awarded in full.

CERTIFICATE OF COMPLIANCE

This memorandum complies with the applicable word-count limitation under LR 54-3(e) because it contains **4,966 words**, which accords with the extension to 5,000 words (ECF No. 76) that Plaintiff obtained prior court approval for. The word count was calculated by the word processing system used to prepare this memorandum, and includes headings, footnotes, and quotations, but excludes the caption, table of contents, table of authorities, signature block, and certificates of counsel.

Date: December 23, 2025              Respectfully submitted,

                                    /s/ Sangye Ince-Johannsen
                                    Sangye Ince-Johannsen, OSB # 193827
                                    Nicholas S. Cady, OSB # 113463


                                    *Attorneys for Plaintiff*