IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CASCADIA WILDLANDS, an Oregon
non-profit corporation,

          Plaintiff,

       v.

CHERYL ADCOCK; PAUL TIGAN;
UNITED STATES BUREAU OF LAND
MANAGEMENT,

          Defendants, and

AMERICAN FOREST RESOURCE
COUNCIL,

          Defendant-Intervenor.

**OPINION & ORDER**

Civ. No. 6:22-cv-00767-AA

AIKEN, District Judge.

Before the Court is Plaintiff Cascadia Wildland's ("Cascadia") Bill of Costs, ECF No. 55, and Motion for Attorney Fees under Equal Access to Justice Act ("EAJA"), ECF No. 58, in its NEPA litigation against Defendant United States Bureau of Land Management and two of its Field Managers in the Northwest Oregon District, Cheryl Adcock and Paul Tigan (collectively "BLM"). For the reasons explained below, Plaintiff's Motions, ECF Nos. 55, 58, are GRANTED.

Page 1 – OPINION AND ORDER

## DISCUSSION

On March 31, 2025, the Court granted summary judgment for Plaintiff on some, but not all, of its NEPA claims. *See* ECF No. 50. On April 29, 2025, the parties proposed a Stipulated Remedy, ECF No. 51, which the Court granted before entering judgment, ECF Nos. 53, 54.

### I.    *Bill of Costs*

Plaintiff timely filed a Bill of Costs 14 days after judgment was entered, seeking reimbursement of $500.14 for costs incurred in filing fees, service, and printing. *See* Pl. Mot., ECF No. 55; Cotton Decl. ¶ 3, ECF No. 59. BLM does not object to the Bill of Costs. Accordingly, the Motion is GRANTED.

### II.    *Attorneys' Fees under the Equal Access to Justice Act*

Plaintiff seeks attorneys' fees under EAJA. *See* Pl. Mot. 58.

EAJA provides that a court shall award fees, costs, and other expenses to a prevailing party who is eligible, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d). "For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002); 28 U.S.C. § 2412(d).

BLM does not dispute that Plaintiff is a prevailing party. BLM contends that its positions were substantially justified, Def. Resp. at 4, and disputes Plaintiff's requested fees, *id.* at 9.

A.    *BLM's Positions were not Substantially Justified*

Under EAJA, a court shall award costs to the prevailing party unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d). "The burden of proving the special circumstances or substantial justification exception to the mandatory award of fees under the EAJA rests with the government." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). Substantial justification is defined as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). "Put differently, the government's position must have a 'reasonable basis both in law and fact.'" *Meier v. Colvin*, 727 F.3d 867, 870 (quoting *Pierce*, 487 U.S. at 565).

BLM failed to prevail on three claims:

(1) The N126 EA was determined to be inadequate in analyzing road construction sediment impacts on coho salmon because it improperly tiered to a programmatic sediment analysis that assumed facts at odds with those of the N126 project. Op. at 29.

(2) The N126 EA was determined to be inadequate in analyzing the cumulative impacts from the N126 project and the Deadwood Restoration Project on both aquatic species and northern spotted owl habitats. *Id.* at 39–40.

(3) The N126 EA was determined to be inadequate because it failed to provide a convincing statement of reasons for its finding that road construction would have no significant impact on marbled murrelets. *Id.* at 43.

BLM first contends that its positions were substantially justified because BLM "prevailed against most of the NEPA claims, including Plaintiff's lead claim regarding N126's effects on northern spotted owls[,]" Def. Resp. at 5. As to marbled murrelet impacts, BLM contends that it failed on only "a single aspect related to murrelets—new road construction[.]" *Id.* at 6. That is, BLM argues that taken "as an inclusive whole, [its] position was substantially justified." Def. Resp. at 7.

That the government prevails on some or even a majority of a plaintiff's claims does not mean that the agency's position on each claim was substantially justified under EAJA. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv. ("LOWD I"),* No. 3:10-cv-01397-SI, 2014 WL 3546858, at *3 (D. Or. July 15, 2014) (awarding fees where plaintiff prevailed on one of five claims). BLM cannot use its wins on unrelated NEPA claims to counter its losses on other NEPA claims. The question is whether BLM's positions on the lost claims were substantially justified.

1.      *The EA failed to analyze road construction sediment impacts*

BLM maintains that its position on road construction sediment impacts was substantially justified because it not only prevailed on one of the two NEPA claims related to such impacts, but its overall sedimentation calculation was "thorough [and] detailed[.]" Def. Resp. at 5 (citing Op. at 28, 29–32).

Again, it is irrelevant that BLM succeeded on one of two claims related to sediment impacts. The question is whether its position on the lost claim was substantially justified. It was not. As the Court noted, although BLM thoroughly

Page 4 – OPINION AND ORDER

calculated the sediment volume that would be delivered to streams in the N126 area, it failed "to explain how that sediment would actually affect the streams or the species in the streams, like the coho salmon." Op. at 28. For any proposed major Federal action, such as the N126 timber sales project, NEPA requires that agencies take a "hard look" at the reasonably foreseeable adverse environmental effects of those actions. *Lands Council v. Powell*, 395 F.3d 1019, 1027 (9th Cir. 2005); 42 U.S.C. § 4332(C). BLM failed to conduct a proper analysis and instead tiered or adopted the sediment impact analysis from the larger program without factual basis to do so. *See* Op. at 28 (questioning whether road construction sediment from a "'few' roads in relation to millions of acres" would have the same environmental impact on streams and aquatic species as road construction sediment from "50 to 90 miles of roads in a 31,000-acre project").

BLM relies on *Seven County Infrastructure Coalition v. Eagle County, Colorado*, 605 U.S. 168, 173, 181 (2025), for the proposition that "NEPA does not require the agency to weigh environmental consequences in any particular way," and "whether a particular report is detailed enough in a particular case . . . requires the exercise of agency discretion." Even assuming that *Seven County* governs here, it does not permit BLM to avoid NEPA's command to examine the direct and indirect impacts of its action. *See Seven Cnty.*, 605 U.S. at 189 (explaining that if a new rail line "could disrupt the habitat of protected species, or the new rail embankments could cause soil erosion into local bodies of water, . . . NEPA dictate[s] that the [government] evaluate those effects"). BLM's position on sediment effects was not

Page 5 – OPINION AND ORDER

substantially justified because rather than analyze the environmental impacts of the N126 program in the N126 area, it adopted the impact analysis of the much larger program area which dilutes or obscures the impacts of the N126 program in the N126 area. "[A]n agency cannot try to 'minimize' the environmental impact of an activity by simply adopting a scale of analysis so broad that it marginalizes the site-level impact of the activity on ecosystem health." *Or. Nat. Res. Council v. Brong*, 492 F.3d 1120, 1130 (9th Cir. 2007). For this reason, BLM's failure to analyze the direct and indirect sedimentation impacts on the N126 area was not substantially justified.

### 2. *The EA failed to analyze cumulative impacts*

BLM contends that its failure to analyze the cumulative impacts of the N126 project and the Deadwood Restoration Project on both aquatic species and northern spotted owl habitats was substantially justified because the Deadwood Creek Project is a U.S. Forest Service project, not a BLM project, and "agencies under NEPA 'are not required to analyze the effects of projects over which they do not exercise regulatory authority.'" Def. Resp. at 7 (quoting *Seven Cnty.*, 605 U.S. at 188).

The 1978 NEPA regulations in effect at the time BLM prepared the N126 EA govern this case, not *Seven County*, which was decided after BLM issued and defended its EA. *See* Op. at 2, n.1; N126 AR 325 (citing 40 C.F.R § 1508.27). The substantial justification inquiry "must focus on . . . whether the government was substantially justified in taking its original action; and . . . whether the government was substantially justified in defending the validity of the action in court." *Kali v.*

*Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). *Seventh County* had not been decided at the time BLM issued the EA it then sought to defend in court.

The 1978 NEPA regulations define "cumulative impact" as the impact of the action when added to other reasonably foreseeable future actions "regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 CFR § 1508.7 (1978). Ninth Circuit precedent interpreting that regulation requires BLM to analyze the cumulative effects of foreseeable timber sales on adjacent federal land. *See, e.g.*, *Kern v. BLM*, 284 F.3d 1062, 1078 (9th Cir. 2002) ("[W]e hold that it was arbitrary and capricious, and a clear error in judgment, for the BLM not to include in the revised EA . . . an analysis of the cumulative impacts of such [reasonably foreseeable timber] sales within [the project area]."); *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1214 (9th Cir. 1998) ("We . . . conclude that the EA is inadequate in addressing the cumulative effects of the multiple salvage logging projects in the Tower Fire area together and in combination with the effects of the fire.").

Further, at the time of summary judgment, BLM argued not that it lacked authority to analyze cumulative effects but that "[it] specifically considered the cumulative effects of N126 and the Deadwood Restoration Project[.]" Def. Resp. at 37, ECF No. 45.

For these reasons, BLM's failure to analyze cumulative impacts was not substantially justified.

Page 7 – OPINION AND ORDER

3.    *The EA failed to explain BLM's no-significant impact finding*

BLM determined that road construction would adversely affect marbled murrelet habitat but concluded that the impact would not be significant because the project would restore nesting habitat and complex late-successional forest.  Op. at 40–43 (citing N126 54, 49, 56, 57–58).  BLM, however, failed to provide a convincing statement of reasons to support its no-significant-impact finding. *Id.* The Court determined that BLM's failure to provide a convincing statement of reasons to explain its no-significant-impact finding left "substantial questions" about the project's effects on murrelet habitat.  *Id.* at 40–43.  *See Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 562 (9th Cir. 2006) ("[A]n EIS must be prepared if substantial questions are raised as to whether a project may cause significant degradation of some human environmental factor. . . . [T]he plaintiff need not show that significant effects will in fact occur, but if the plaintiff raises substantial questions whether a project may have a significant effect, an EIS must be prepared.").

BLM contends that its failure to provide a convincing statement of reasons was substantially justified because its unsupported no-significant-impact finding "fall[s] within a broad zone of reasonableness." Def. Resp. at 6–7 (quoting *Seven Cnty.*, 605 U.S. at 183).  Again, even if *Seven County* governs retroactively here, there is no indication that *Seven County* removed the requirement for an agency to provide a convincing statement of reasons to support its no-significant-impact finding.  "If an agency decides not to prepare an EIS, it must supply a 'convincing statement of reasons' to explain why a project's impacts are insignificant." *Blue Mountains*, 161 F.3d at 1212.  "The statement of reasons is crucial to determining whether the agency

Page 8 – OPINION AND ORDER

took a 'hard look' at the potential environmental impact of a project." *Id.*; *see also Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 864 (9th Cir. 2005) ("The Corps cannot avoid preparing an EIS by making conclusory assertions that an activity will have only an insignificant impact on the environment. . . . If an agency . . . opts not to prepare an EIS, it must put forth a 'convincing statement of reasons' that explain why the project will impact the environment no more than insignificantly.") (internal citations and quotation marks omitted).  Here BLM failed to provide an EIS yet also failed to provide a convincing statement of reasons for its no-significant-impact finding.  For that reason, BLM's position was not substantially justified.

In sum, BLM's positions as to the three claims it lost were not substantially justified because those positions had no reasonable basis in law or in fact.

B.    *Requested Attorneys' Fees*

Plaintiff seeks reasonable attorneys' fees for five attorneys in a total amount of $265,991.30.  Plaintiff affirms that it secured litigation assistance from Western Environmental Law Center ("WELC") "because . . . its attorneys' skills were needed in this litigation, and our in-house counsel's caseload precluded him from taking the lead."  Cotton Decl. ¶ 2.  Plaintiff also affirms that "[it] was unable to secure counsel of the experience and caliber of the attorneys at [WELC] at the EAJA base rate" and that Plaintiff was "unaware of qualified attorneys with the skills necessary to prosecute cases such as this one at the EAJA base rate in the forum of Eugene." *Id.*

The EAJA statutory maximum rates in the Ninth Circuit are $244.62 (2023), $251.84 (2024), and $258.46 (2025). Ninth Circuit, Statutory Maximum Rates under EAJA (2025), www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (citing 28 U.S.C. § 2412(d)(2)(A); *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005); and 9th Cir. R. 39-1.6).

However, a "special factor" may justify a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). In the Ninth Circuit, a court may award a higher rate if (1) the attorney possesses "distinctive knowledge and skills developed through a practice specialty," and (2) those skills are needed in the litigation and (3) are not available elsewhere at the statutory rate. *Love*, 924 F.2d at 1496. It is the plaintiff's burden to satisfy these elements. *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158–62 (9th Cir. 2008).

Where higher rates are justified, a court looks to the "prevailing market rate in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013). The preferred method of calculating reasonable attorney's fees is the "lodestar" method. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010). The lodestar amount is the product of the number of hours reasonably spent on the litigation multiplied by a reasonable hourly rate. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

To determine reasonable market rates, courts in this district use the Oregon State Bar Economic Survey ("OSB Economic Survey") as its initial benchmark.[1]  LR 54-3 Practice Tip; *Roberts v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850, 857 (D. Or. 2002).  To make this calculation, a district court should consider the quality of an attorney's performance, the results obtained, the complexity of a case, and the special skill and experience of counsel.  *LOUD I*, 2014 WL 3546858, at *6 (citing *Perdue*, 559 U.S. at 553–54); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) (explaining that reasonable market rates also turn on "the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases").

However, the OSB Economic Survey, published in 2022, underestimates the prevailing hourly rates for attorneys who specialize in federal environmental litigation and contains no data after 2022.  *See LOWD I*, 2014 WL 3546858, at *15 ("the OSB . . . Survey[] do[es] not encompass the highly specialized practice of federal environmental litigation"); *Kathrens v. Bernhardt*, 505 F. Supp. 3d 1085, 1092 (D. Or. 2020) (public interest environmental attorneys "should not be lumped in with real estate and land use practices"); *McKenzie Flyfishers v. McIntosh*, 158 F. Supp. 3d 1085, 1090 (D. Or. 2016) (various problems with the OSB survey result in an "underestimation of the prevailing market rate for skilled fulltime attorneys with good reputations").

---

[1] OSB Economic Survey, https://www.google.com/search?client=firefox-b-1-d&channel=entpr&q=OSB+economic+survey (2022).

The Ninth Circuit and courts in this district have recognized that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge" and justifies enhanced rates. *Love*, 924 F.2d at 1496; *see also Portland Audubon Soc. v. Lujan*, 865 F. Supp. 1464, 1476 (D. Or. 1994); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Smith*, 491 F. Supp. 2d 980, 988 (D. Or. 2007). This Court has consistently awarded rates for successful litigants at the 75th percentile of the OSB Economic Survey. *See, e.g., Brady Mktg. Co. Inc. v. Kai U.S.A. Ltd.*, No. 3:16-cv-1878-MO, 2018 WL 3377083, at *3 (D. Or. July 11, 2018) (awarding "the 75th percentile rate . . . is the usual practice of this district"); *McElmurry v. U.S. Bank Nat. Ass'n*, Civil No. 04-642-HA, 2008 WL 1925119, at *3 (D. Or. April 30, 2008) (recognizing that "[e]xperienced senior attorneys who are specialists in [their fields] will receive an hourly rate at the 75th percentile rate for their level of experience").

Further, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate." *LOWD I*, 2014 WL 3546858, at *14 (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)); *see also Wyatt B. v. Kotek*, No. 6:19-cv-00556-AA, 2024 WL 4867082, at *4 (D. Or. Nov. 22, 2024) (explaining that the court "supplement[s] its review of the OSB Economic Survey data with the expert opinions supplied by [p]laintiffs").

1.     *Attorney Uwaine*

Karli Uwaine is a WELC staff attorney who graduated from Lewis & Clark Law School in 2023 with certificates in Environmental and Natural Resources Law and Animal Law.  Uwaine Decl. ¶ 1, 2, ECF No. 62.  At the time of this litigation, Uwaine has been practicing for two years.  *Id.* ¶ 5.

Uwaine began environmental law training in law school.  *See id.* ¶ 3.  Uwaine joined WELC as a two-year legal fellow and was promoted to staff attorney in 2024.  *Id.* ¶ 4.  Uwaine seeks EAJA statutory maximum rates of $244.62 for 2023 and $251.84 for 2024 and 2025, multiplied by reasonable hours for a total of $80,968.30 in attorneys' fees.  *Id.* ¶ 9; Ex. A, Updated Uwaine Timesheets, ECF No. 79.

2.     *Attorney Jensen*

Peter Jensen is a Cascadia staff attorney who graduated from the University of Oregon ("UO") School of Law in 2022 with an Environmental and Natural Resources Law and Policy certificate.  Jensen Decl. ¶¶ 2, 3, ECF No. 63.  At the time of this litigation, Jensen has been practicing environmental litigation for three years.  *Id.* ¶ 5.  Jensen began environmental law training in law school.  *See id.* ¶ 3.  After graduating, Jensen practiced in Salt Lake City for a year before joining Cascadia in 2023.  *Id.* ¶ 4.  During the last two years with Cascadia, Jensen has been involved in numerous environmental lawsuits in district courts in the Ninth Circuit, *id.* ¶ 5, and had gained "experience with public interest environmental suits with a particular focus on challenging federal timber sales and fish and wildlife issues[,]" *id.* ¶¶ 4, 7.

Page 13 – OPINION AND ORDER

Jensen seeks market rates for an environmental litigator in the forum of Eugene of $250 for 2023, $275 for 2024, and $300 for 2025, multiplied by reasonable hours for a total $9,927.50. *Id.* ¶ 8; Ex. A, Jensen Timesheets, ECF No. 63 at 6. The declaration of Attorney Daniel R. Kruse, who has practiced environmental litigation in Oregon for 19 years is offered to support the "reasonable hourly rates" requested by Jensen. Kruse Decl. ¶¶ 5, 7, 23 (citing the rates awarded in *Cascadia Wildlands v. Bureau of Land Mgmt.*, 987 F. Supp. 2d 1085, 1097 (D. Or. 2013) and in *Landwatch v. Jefferies*, No. 2:17-CV-01004-SU, 2020 WL 8172994, at *9 (D. Or. Aug. 7, 2020)), ECF No. 65.

### 3.    *Attorney Ince-Johannsen*

Sanje Ince-Johannsen is a WELC staff attorney. Ince-Johannsen Decl. ¶ 1, ECF No. 60. At the time of this litigation, Ince-Johannsen has been practicing environmental litigation for 6 years (since 2019). *Id.* ¶ 8. Ince-Johannsen began environmental law training in law school. *See id.* ¶¶ 4–7. After graduating, Ince-Johannsen joined WELC as a legal fellow and, in 2020, was promoted to WELC staff attorney. *Id.* ¶ 8. Ince-Johannsen has been involved in numerous environmental lawsuits in federal district courts in the Ninth and Tenth Circuits. *Id.* ¶ 9.

Ince-Johannsen seeks market rates for an experienced environmental litigator in the forum of Eugene of $325 in 2022, $340 in 2023, $355 in 2024, and $370 in 2025, multiplied by reasonable hours, for a requested total of $88,579.00. *Id.* ¶¶ 15, 16; Ex. A, Updated Ince-Johannsen Timesheets, ECF No. 80. The declaration of William H. Sherlock, an attorney who has litigated in federal and state courts in Oregon for 35

Page 14 – OPINION AND ORDER

years in the areas of administrative and environmental law, land use, and real property, is offered to support Ince-Johannsen's requested rates. Sherlock Decl. ¶¶ 2, 5, ECF No. 64.

          4.    *Attorney Cady*

Nicholas S. Cady has been the Cascadia Legal Director since 2011. Cady Decl. ¶ 3, ECF No. 61. At the time of this litigation, he has been practicing environmental litigation for 14 years. *Id.* ¶ 6. Cady began training in environmental law in law school. *See id.* ¶ 2. Cady has been involved in numerous environmental lawsuits in Oregon state courts and in federal district courts in the Ninth Circuit. *Id.* ¶¶ 6, 7. He is regarded as an expert in the field of environmental law, particularly as to federal timber sales, and is "regularly consulted" by environmental organizations. *Id.* ¶ 8. Due to his "positive working relationships" with government and industry officials, he has facilitated numerous "collaborative resolutions." *Id.* He affirms that "[t]hese relationships helped facilitate the resolution achieved [in this case]." *Id.*

He has been awarded enhanced attorney fees on numerous cases. *Id.* ¶ 9. He seeks market rates for a senior environmental litigator in the forum of Eugene of $515 for 2025, $500 for 2024, $485 for 2023, $470 for 2022, $455 for 2021, and $440 for 2020, multiplied by reasonable hours, for a requested total of $59,009.00. *Id.* ¶ 10; Ex. A, Cady Timesheets, ECF No. 61 at 7. The declaration of environmental litigator Kruse is offered to support Cady's requested rates. Kruse Decl. ¶¶ 5, 7, 24 (citing the rates awarded in *Landwatch,* 2020 WL 8172994, at *9, and in *McKenzie Flyfishers*, 158 F. Supp. 3d at 1090).

Page 15 – OPINION AND ORDER

    5.    *Attorney Mellgren*

Thomas Mellgren is a former WELC attorney who worked on this case from its inception until July 2022 when he began his current role as an Administrative Law Judge for the Oregon Public Utility Commission. Ince-Johannsen Decl. ¶¶ 16, 17. Ince-Johannsen attested to Mr. Mellgren's qualifications and work to "avoid any conflict with [Mellgren's] judicial duties or the appearance of impropriety[.]" *Id.* ¶ 16. At the time of this litigation, Mellgren has been practicing environmental litigation for 14 years (since 2011). Id. ¶¶ 17(a), (b).

Mellgren joined WELC in 2011 and worked in positions of increasing responsibility. *Id.* ¶ 17(b). He was WELC general counsel from 2019 to 2022. *Id.* Mellgren has extensive environmental litigation experience in federal district courts in the Ninth and Tenth Circuits and in courts of appeals. *Id.* ¶ 17(c). This Court and others have previously recognized his expertise and awarded him market rates under EAJA. *Id.* ¶ 17(e).

WELC seeks market rates for a senior environmental litigator in the forum of Eugene of $440 in 2020, $455 in 2021, and $470 in 2022, multiplied by reasonable hours for a total of $27,507.50 in attorneys' fees on Mr. Mellgren's behalf. *Id.* ¶ 17(h); Ex. B, ECF No. 60 at 19. The declaration of William H. Sherlock is offered to support Mellgren's requested market rates. Sherlock Decl. ¶¶ 2, 5. ("[G]iven [Mr. Mellgren's] skills and experience, fair market hourly rates for Mr. Mellgren are $440 in 2020, $455 in 2021, and $470 in 2022.").

Page 16 – OPINION AND ORDER

6.    *Total Requested Fees*

| Attorney | Requested Fee |
| --- | --- |
| Uwaine | $80,968.30 |
| Jensen | $9,927.50 |
| Ince-Johannsen | $88,579.00 |
| Cady | $59,009.00 |
| Mellgren | $27,507.50 |
| **TOTAL** | **$265,991.30** |

C.    *BLM Objections*

BLM urges the Court to reduce the requested attorneys' fees by 50% because "[P]laintiff achieved only limited success, obtaining just a fraction of the relief it sought in its complaint." Def Resp. at 9 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)). BLM points to the fact that "Plaintiff agreed to implementation of sixteen timber sales under N126—including seven sales that did not yet have decision records and were not yet purchased by timber contractor." *Id.*

Plaintiff replies that BLM's N126 EA authorized timber sales across 31,470 acres but that the Stipulated Remedy limited implementation to "less than 25% of the commercial logging authorized in the N126 decision." Second Cady Decl. ¶ 9, ECF No. 78. The Stipulated Remedy not only "eliminat[es] more than 75% of the project's authorized footprint," it also bars BLM from pursuing commercial logging in "the 'higher priority' mature and old-growth areas that were the primary driver of Cascadia's challenge." Pl. Reply at 6–7 (quoting Second Cady Decl. ¶ 9), ECF No. 77.

Plaintiff contends that it obtained "significant ecological relief" in the form of "permanent protection of all high-priority old-growth forest units[.]" Pl. Reply at 9.

The Court is satisfied that Plaintiff obtained significant relief and declines to reduce the fee award on the ground that Plaintiff chose to enter into a Stipulated Remedy allowing BLM to proceed with "largely unobjectionable" commercial logging while protecting high-priority, old growth forest. Second Cady Decl. ¶ 9.

BLM also urges the Court to reduce lodestar fee amounts because "Plaintiff unnecessarily staffed this case up with higher-priced attorneys and seeks an award for various non-compensable tasks." Def. Resp. at 13. BLM contends that Plaintiff fails to show that the skills of the higher-priced attorneys were needed and that it could not obtain an attorney elsewhere at the EAJA statutory maximum rate. *Id.* at 13–14 (citing *Love*, 924 F.2d at 1496).

The Court has reviewed attorneys' filings and is satisfied that Plaintiff appropriately sought and obtained assistance of WELC attorneys with specialized experience in environmental litigation and timber sales and could not have obtained similarly experienced attorneys to perform the litigation at EAJA rates in Eugene, Oregon. The Court is satisfied that the increased market rates requested by environmental litigation attorneys here are merited. Courts in this district have repeatedly recognized that environmental litigation requires specialized skills justifying enhanced rates. *See, e.g.*, *LOWD I*, 2014 WL 3546858, at *13 (finding that NEPA and NFMA litigation involves a "particularly distinctive and rare area of expertise"); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*

Page 18 – OPINION AND ORDER

("*LOWD II*"), 305 F. Supp. 3d 1156, 1167 (D. Or. 2018) (finding that specialized knowledge necessary where the case involved "complicated federal environmental law issues"). The Court is also satisfied with the higher market rates requested by Cady and Mellgren, each of whom is a senior attorney with extensive specialized experience in environmental litigation of the type needed to litigate this case—a case that involved a 53,000-page administrative record, complex agency scientific models, and tiered NEPA regulations. Cady and Melgren each affirm that they have received similar rates in other cases. And affidavits from senior attorneys with knowledge of the market rates for this highly specialized litigation field support Cady and Melgren's requests. *See* Kruse Decl. ¶¶ 5, 7, 23, 24; Sherlock Decl. ¶¶ 2, 5.

BLM urges the Court to reject paying Mellgren for his litigation work on this case because Mellgren failed to file a declaration to support payment on his behalf. Def. Resp at 18. The Court has reviewed the filings and declines to reject paying WELC for Mellgren's work on this case. The Court accepts Ince-Johannsen's declaration in support of Mellgren's specialized experience and his work on this case.

Finally, BLM urges the Court to reduce the fee amount for what it contends is non-compensable work: (1) work in agency administrative proceedings before the Complaint was filed, *id.* at 16–17, (2) work to prepare a preliminary injunction because no such injunction was filed, *id.* at 17–18, and (3) work to prepare attorney fee motion, *id.* at 19–20.

As to its pre-litigation work, Plaintiff replies that it "omit[ted] time spent drafting the administrative protest and litigating the IBLA appeal[,]" Pl. Reply at 13;

Page 19 – OPINION AND ORDER

Second Cady Decl.; Cady Timesheet at 6–7 (showing omissions in red), and that its other pre-litigation work involved "spent vetting legal theories, conferring with the client, and drafting the Complaint[,]" which is compensable, *id.*

As to work spent on a draft preliminary injunction, Plaintiff replies that throughout this litigation, it "maintained and repeatedly revised a draft motion and memo for a preliminary injunction that was continually updated by on-the-ground field-checking data and declarations as BLM released new timber sales[]" in an "unusual drawn-out" fashion. Second Cady Decl. ¶ 6; Pl. Reply at 14 (citing *Cascadia Wildlands*, 987 F. Supp. 2d at 1096 ("[A]lthough never filed, the hours spent preparing a motion for a temporary restraining order and/or preliminary injunction are reasonably related to plaintiffs' NEPA claims and are thus compensable.")).

Finally, Plaintiff's work to prepare the fee petition is compensable. *See Greenpeace, Inc. v. Stewart*, No. 17-35945, 2020 WL 2465321, at \*\*5–6 (9th Cir. May 12, 2020) (rejecting that attorneys entitled to an EAJA fee award should have their market rates reduced to the statutory base rate for the fee proceeding); *see also LOWD I*, 2014 WL 3546858, at \*13 ("The United States offers no support for the contention that the [c]ourt assign different hourly rates to the same attorney, depending on the individual task performed. EAJA fee awards are considered as an 'inclusive whole' and not 'atomized line-items.'").

The Court has reviewed the filings and billing records and concludes that Plaintiff is entitled to the requested attorneys' fees for work performed during this litigation, including the continuous and extensive revisions of a draft preliminary

injunction, which BLM necessitated by its own actions, and for the non-administrative pre-litigation work and the fee petition preparation work.

## CONCLUSION

For the reasons explained above, the Court GRANTS Plaintiff's Motion for its Bill of Costs, ECF No. 55, and Plaintiff's Motion for Attorneys' Fees under EAJA, ECF No. 58, in the amount of $265,991.30.

It is so ORDERED and DATED this ___23rd___ day of March 2026.


      /s/Ann Aiken
ANN AIKEN
United States District Judge

Page 21 – OPINION AND ORDER